**UNITED STATES of America,**

v.

**Yah Lin "Charlie" TRIE, Defendant.**

No. CR. 98–0029–1(PLF).

United States District Court,
District of Columbia.

Oct. 9, 1998.

Thomas W. McNamara, Sandra Wilkinson, U.S. Dept. Of Justice, Campaign Finance Task Force, Washington, DC, for U.S.

Reind Weingarten, Steptoe & Johnson, Washington, DC, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on defendant's Motion 1A (to Dismiss Count 1 for Failure to State an Offense Under 18 U.S.C. § 371 and Violation of Due Process), Motion 1B (to Dismiss Count 1 Based on Improper Grand Jury Instructions or to Compel Disclosure of Grand Jury Instructions), and Motion 2 (to Dismiss Counts 9–11 for Failure to State an Offense under 18 U.S.C. § 1001). The Court heard argument on these and numerous other pretrial motions on July 1, 1998 and disposed of all the other motions by Opinion of July 17, 1998. The Court reserved ruling on these three motions pending argument and decision on the pretrial motions in *United States v. Hsia*, Criminal No. 98–0057, because Ms. Hsia raised issues in her motions that were similar to those raised here. The Court ruled on the motions in the *Hsia* case on September 10, 1998. *See United States v. Hsia*, 24 F.Supp.2d 33 (D.D.C. 1998). For the reasons stated below, the Court will dismiss Counts 9–11 and deny the defendant's other motions.

## I. BACKGROUND

Yah Lin "Charlie" Trie has been indicted in fourteen counts: one count of conspiracy to defraud the United States by impairing and impeding the Federal Election Commission ("FEC") and conspiracy to use the mails and wires to defraud the Democratic National Committee ("DNC"), in violation of 18 U.S.C. § 371; seven counts of using the mail and/or wires to defraud the DNC and/or aiding and abetting, in violation of 18 U.S.C. §§ 1341, 1343 and 2; three counts of causing others to file false statements with the FEC, in violation of 18 U.S.C. §§ 1001 and 2(b); one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 371; and two counts of tampering with witnesses or aiding and abetting the tampering with witnesses, in violation of 18 U.S.C. §§ 1505 and 2.[1] The first eleven counts generally arise out of conduct allegedly taken by Mr. Trie to obtain certain benefits by circumventing provisions of the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431, *et. seq.* The remaining three counts relate to actions allegedly taken by Mr. Trie to interfere with ongoing investigations.

FECA provides a detailed and comprehensive scheme to regulate the financing of federal elections by, among other things, limiting contributions to electoral campaigns and requiring candidates to report receipts and expenditures. Of specific relevance to this case, FECA provides that "[n]o person shall make contributions" that exceed certain limits set forth in the statute, 2 U.S.C. § 441a; that it is unlawful for any foreign national to make any contribution in connection with an election to any political office, 2 U.S.C. § 441e; and that "[n]o person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution." 2 U.S.C. § 441f.

A "contribution" is defined, in relevant part, as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for *Federal* office." *See* 2 U.S.C. § 431(8)(A) (emphasis added).[2] Because most of FECA's restrictions apply only to funds contributed "for the purpose of influencing any election for Federal office," many political committees have set up separate accounts for money that has been donated: money that has been contributed subject

---

1. Count 14 of the indictment alleged that Mr. Trie obstructed a congressional investigation, in violation of 18 U.S.C. § 1505. That count has been dismissed for improper venue. *See* Opinion of July 17, 1998 at 15–16.

2. "Contribution" is separately and more broadly defined for purposes of 2 U.S.C. § 441b. 2 U.S.C. § 441b(b)(2). The separate definition, however, is irrelevant to this case.

to the proscriptions of FECA ("hard money") is deposited into a "federal" account and is used to finance federal election campaigns, while all other money that is donated ("soft money") is deposited into a "non-federal" account and is used for, among other things, state and local campaigns or issue advertising.

FECA requires "political committees," including national political parties, to exert "best efforts" to identify each person who made "contribution[s]" in the aggregate annual amount of $200 or more and to report that information to the Federal Election Commission. 2 U.S.C. §§ 432(i), 434. FEC regulations require national political party committees to report *any* receipt of funds over $200, regardless of whether the funds are deemed "hard" or "soft" money. 11 C.F.R. § 104.8(a), (e). The statute charges the FEC with the administration of FECA and grants the FEC exclusive jurisdiction over civil enforcement. 2 U.S.C. § 437c. It provides for both civil and criminal enforcement, and specifies criminal penalties for certain violations, up to a maximum of one year imprisonment and/or a fine. 2 U.S.C. § 437g(d). The Department of Justice prosecutes criminal violations of the statute. 2 U.S.C. § 437g(a)(5)(C). Mr. Trie has not been charged with any criminal violations of FECA.

## II. MOTION TO DISMISS COUNT 1 (CONSPIRACY)

Count 1 charges that Mr. Trie conspired in violation of 18 U.S.C. § 371 to (1) impair and impede the lawful functions of the FEC, and (2) use the mails and wires in violation of 18 U.S.C. §§ 1341 and 1343 to defraud the DNC. With respect to the FEC object of the conspiracy, the indictment alleges, *inter alia,* a scheme to impair and impede the FEC's enforcement obligations under FECA.[3] According to the indictment, Mr. Trie allegedly (1) made a number of contributions from his own personal account for which he was reimbursed from foreign sources, (2) set up "straw" donors or "conduits" to make contri-

butions and then used money from foreign sources to reimburse those conduits, (3) made contributions through one or more companies, and (4) entered into an agreement with his co-conspirators to conceal the true foreign source of contributions by setting up a conduit contributor scheme. Indictment at 8–17. The mail and wire fraud object of the conspiracy is premised on the asserted "policy of the DNC not to accept contributions made by foreign nationals . . . and/or in the name of another person." Indictment at 5. It alleges that Mr. Trie and his co-conspirators used the mails and wires in furtherance of a scheme to make conduit contributions from foreign sources in order to obtain benefits from the DNC that they would not have been able to obtain if the DNC had been aware of the true source of the funds.

Mr. Trie first contends that Count 1 must be dismissed because the indictment never specifically alleges violations with respect to "hard money" contributions and because some of the alleged overt acts relate to soft money donations. He argues that since the requirements of FECA apply only to hard money contributions, the failure of the indictment to specifically allege acts with respect to hard money contributions means that the alleged acts could not have obstructed any function of the FEC. In the alternative, he argues that because the indictment does not specifically allege "hard money" contributions, the grand jury may not have been properly instructed concerning the distinction between hard and soft money and that this count of the indictment therefore must be dismissed or he should at least have access to transcripts of the grand jury instructions in order to pursue this argument further. While Mr. Trie is correct that the relevant provisions of FECA do not apply to soft money donations, the Court concludes that the indictment adequately alleges violations with respect to hard money contributions. Mr. Trie therefore is not entitled to dismissal of this count or to access to the grand jury instructions.

---

**3.** The indictment does not charge a conspiracy to violate any provision of FECA; any such conspir-acy would be a misdemeanor.

### A. Sufficiency Of The Indictment

 The essential elements of a conspiracy charge are (1) an agreement among two or more persons, (2) either to commit an offense against the United States or to defraud the United States, (3) with knowledge of the conspiracy and with actual participation in it, where (4) one or more of the co-conspirators takes any overt act in furtherance of the conspiracy. 18 U.S.C. § 371; *see Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942). The agreement is the essence of the conspiracy and, provided that there is only one agreement, the government may allege one conspiracy with multiple illegal objects. *Braverman v. United States,* 317 U.S. at 53, 63 S.Ct. 99; *see United States v. Treadwell,* 760 F.2d 327, 334 (D.C.Cir.1985) ("Because it is the conspiratorial agreement that the statute punishes, a single agreement may have multiple objects"); *May v. United States,* 175 F.2d 994, 1002 (D.C.Cir.1949) ("neither a multiplicity of objects nor a multiplicity of means converts a single conspiracy into more than one offense.... 'The conspiracy is the crime, and that is one, however diverse its objects' ") (quoting *Frohwerk v. United States,* 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561 (1919)).

 Mr. Trie's primary argument is that the conspiracy count must be dismissed because any actions he took that related to soft money donations could not have impaired or impeded the FEC.[4] As an initial matter, even if Mr. Trie were correct that his conduct could not have impaired or impeded the FEC, he still would not be entitled to dismissal of this count. It is settled law that the government is only required to prove any one of the illegal objects alleged in the indictment, so long as that object was contemplated in the conspiratorial agreement; it is not

necessary for it to establish all illegal objects of the conspiracy. *Griffin v. United States,* 502 U.S. 46, 57-60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *United States v. Wynn,* 61 F.3d 921, 928 (D.C.Cir.), *cert. denied,* 516 U.S. 1015, 116 S.Ct. 578, 133 L.Ed.2d 501 (1995); *United States v. Treadwell,* 760 F.2d at 337. The indictment permissibly alleges two illegal objects: to violate 18 U.S.C. §§ 1341 and 1343 by using the mails and wires to defraud the Democratic National Committee and to defraud the United States by impairing and impeding the Federal Election Commission. *See United States v. Treadwell,* 760 F.2d at 337 ("[A] single conspiracy may contemplate the violation of one or more federal statutes in addition to defrauding the United States"). Thus, even if Mr. Trie prevailed on his argument that one of those objects has not been sufficiently alleged, that would at most would result in the Court striking that object of the conspiracy.

To the extent that (1) the DNC object of the conspiracy is premised on the notion that the DNC had a policy of not accepting hard money contributions from foreign sources or in the name of another and (2) the FEC object of the conspiracy relies on a theory that the conspirators impaired and impeded the FEC by obstructing its enforcement of FECA, it is important to make clear before this case proceeds to trial what FECA does and does not prohibit. The government concedes that the statutory prohibition of making contributions in the name of another under 2 U.S.C. § 441f applies only to hard money contributions. It contends, however, that FECA's prohibition of contributions by foreign nationals under 2 U.S.C. § 441e applies to soft money donations as well as to hard money contributions. Govt's Opp. at

---

4. To the extent that Mr. Trie is arguing that it is impossible for any person to take an action with respect to soft money that impairs or impedes the FEC, he clearly is incorrect. While FECA itself proscribes only conduct that relates to "hard money" contributions, FEC regulations require political committees to report both hard money contributions and soft money donations. *See* 11 C.F.R. § 104.8(a), (e). Certainly the FEC has a right to ask political committees for information about soft money donations if such re-

porting is necessary for the FEC to perform its statutory function of enforcing expenditure or contribution limits. Thus, for example, if the Treasurer of the Republican or Democratic National Committee conspired with another to purposefully misreport or misidentify receipts of soft money donations, the government could seek an indictment for conspiracy to impair and impede the FEC in violation of 18 U.S.C. § 371, even though the conduct related only to soft money donations.

17–18. The Court disagrees.[5] With one exception, 2 U.S.C. § 441b, which has its own separate definition of the term "contribution," the word "contribution" has been defined by Congress in FECA as "money or anything of value made by any person for the purpose of influencing any election for *Federal* office." 2 U.S.C. § 431(8)(A) (emphasis added). That is the definition (with the one exception already noted) that governs throughout the statute. Because 2 U.S.C. § 441e specifically prohibits only *contributions* by foreign nationals, the statute on its face therefore does not proscribe soft money donations by foreign nationals or by anyone else.[6]

The government argues that because Section 441e uses the phrase "an election to *any* political office" (emphasis added), Congress necessarily intended for Section 441e to apply to soft money donations. Govt's Opp. at 18. In making this argument, the government omits the essential language that describes the conduct that the statute prohibits: making a "*contribution* of money or other thing of value in connection with an election to any political office." The word *contribution* is a term of art defined by the statute, and the statutory definition applies only to elections for *federal office, see* 2 U.S.C. § 431(a)(8); it therefore does not encompass soft money donations. If Congress had intended Section 441e or any other provision of FECA to apply to soft money, it either could have provided an alternative definition of the term "contribution" for Section 441e, as it did for Section 441b, or it could have used the word "donation" rather than "contribution," as the regulations promulgated by the FEC do when referring to "non-federal" or "soft money" accounts. *See, e.g.,* 2 U.S.C. § 441b (providing separate definition of contribution for purposes of that section); 11 C.F.R. § 104.8(e) ("National party committees shall disclose in a memo Schedule A information about each individual, committee, corporation, labor organization, or other entity that donates an aggregate amount in excess of $200 in a calendar year to the committee's *non-federal account(s)* ") (emphasis added). Congress did neither in Section 441e.

■ In the face of the clear statutory language and in the absence of any indication in the statute or legislative history that Congress intended Section 441e to apply to soft money donations, the Court concludes that Section 441e applies only to hard money "contributions." Indeed, it could not be more apparent that, with the exception of Section 441b, Congress intended the proscriptions of the Federal Election Campaign Act to apply only to "hard money" contributions.[7]

---

**5.** The government has filed a motion seeking clarification of this Court's *Brady* ruling, specifically, whether internal government documents indicating that Section 441e does not apply to soft money donations, if such documents exist, constitute exculpatory *Brady* material that must be disclosed to Mr. Trie. In view of the fact that the Court now has ruled that Section 441e does not apply to soft money donations and that the government will have to prove hard money contributions at trial, internal government documents indicating that Section 441e does not apply to soft money donations are not exculpatory. The motion of the government for clarification regarding disclosure of internal documents therefore will be granted.

**6.** Section 441e of FECA provides:
It shall be unlawful for a foreign national directly or through any other person to make any *contribution* of money or other thing of value, or to promise expressly or impliedly to make any such contribution, in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office; or for any person to solicit, accept, or receive any such contribution from a foreign national.
2 U.S.C. § 441e (emphasis added).

**7.** It is worth noting that the Bipartisan Campaign Reform Act of 1998, a bill introduced in the House of Representatives on March 19, 1998, to amend the Federal Election Campaign Act, contains a section entitled "Strengthening Foreign Money Ban" that would amend Section 441e to specifically prohibit foreign nationals from making "a *donation* of money or other thing of value." Bipartisan Campaign Reform Act of 1998, H.R.3526, 105th Cong. § 506 (1998) (emphasis added).

The proposed amendment suggests that the House of Representatives does not believe that Section 441e as currently drafted prohibits foreign nationals from making donations of soft money. While the "views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one," *South Dakota v. Yankton Sioux Tribe,* 522 U.S. 329, ——, 118 S.Ct. 789, 803, 139 L.Ed.2d 773 (1998), *quoting United*

Although Sections 441e and 441f apply only to "contributions" as defined in the statute, and thus only to "hard money," Mr. Trie is not entitled to dismissal of the conspiracy count. While he is correct that the indictment never uses the phrase "hard money," it consistently uses the term "contribution" throughout the manner and means and overt acts sections of the indictment. *See* Indictment at 6–17. As discussed above, "contribution" is a term of art specifically defined by FECA, and Congress has indicated that "the definitions of the Federal Election Campaign Act, as amended, [are] controlling whenever the provisions of Title 18 impact on federal elections and politicial [sic] activity." H.R.Rep. No. 96–422 at 25 (explaining provision of Federal Election Campaign Act Amendments of 1979, Pub.L. 96–187, that repealed 18 U.S.C. § 591, which had separately defined terms, including "contribution," for purposes of Title 18, Chapter 29, Elections and Political Activities).[8] At trial, therefore, the government will have the burden of proving beyond a reasonable doubt that the illegal "contributions" alleged in the indictment in fact are contributions as defined by FECA, and the jury will be so instructed. For purposes of the indictment, however, the use of the word "contribution" is sufficient. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

### B. Instructions To Grand Jury

Mr. Trie also argues that the failure of the indictment to distinguish between hard money contributions and soft money donations demonstrates that the grand jurors were not properly instructed about the distinction and that this alleged error substantially and impermissible influenced the grand jury's decision to indict him. In support of this contention, Mr. Trie proffers only that (1) the indictment alleges payments that he characterizes as soft money, and (2) the indictment does not mention the distinction between hard money and soft money. Def's Motion No. bA at 1–2. He therefore requests dismissal of Count 1 or, in the alternative, disclosure of the grand jury instructions so that he can present a more concrete case for dismissal.

■ There is a "presumption of regularity in grand jury proceedings," *United States v. Recognition Equip., Inc.,* 711 F.Supp. 1, 11 (D.D.C.1989), and a defendant seeking dismissal of an indictment on the grounds of grand jury error therefore faces a very heavy burden. Even if a defendant can establish error at the grand jury stage, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (*quoting United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring)). A great deal more than mere speculation that a grand jury has been improperly instructed is required to satisfy this standard. *See United States v. Buchanan,* 787 F.2d 477, 487 (10th Cir.1986) (dismissal of indictment an extraordinary remedy designed to insure proper standards of conduct by prosecutor); *United States v. Breslin,* 916 F.Supp. 438, 440–441 (E.D.Pa.1996) (dismissal of indictment warranted only where there is substantial and specific evidence); *United States v. Recognition Equip., Inc.,* 711 F.Supp. at 13 (dismissal appropriate only where misconduct of

---

States v. Philadelphia National Bank, 374 U.S. 321, 348–49, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963), the proposed amendment to Section 441e further undermines the government's argument. Cf. Loving v. United States, 517 U.S. 748, 770, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) ("subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction") (internal quotations omitted); Beverly Community Hospital Assn. v. Belshe, 132 F.3d 1259, 1265 (9th Cir.1997) (same).

8. Mr. Trie also contends that the alleged conduct must be charged as a conspiracy to violate FECA or one of its provisions rather than as a conspiracy to defraud the United States and that the conspiracy count therefore must be dismissed. He relies on United States v. Minarik, 875 F.2d 1186, 1194 (6th Cir.1989). For the reasons discussed in United States v. Hsia, 1998 WL 635848 at *19 n. 21, the Court finds that the narrow holding of Minarik does not apply in these circumstances.

prosecutor has "clearly infringed on the grand jury's ability to evaluate whether the evidence establishes probable cause").

 To the extent that Mr. Trie's complaint rests on the allegations related to soft money donations contained in the section of Count 1 enumerating overt acts taken in furtherance of the alleged conspiracy, *see* Indictment at 8–17, his argument for dismissal necessarily fails. It is established that overt acts may be wholly innocent, *see Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Braverman v. United States,* 317 U.S. at 53, 63 S.Ct. 99, and the fact that the overt acts alleged here may include actions taken with respect to soft money donations therefore is irrelevant. By contrast, the "manner and means" paragraphs refer only to "contributions," a term of art relating to federal elections and hard money.

 To the extent that Mr. Trie is arguing that the grand jury may not have heard any evidence relating to hard money contributions, that would be an argument about the sufficiency of the government's evidence, an argument best reserved for trial. The sufficiency of the evidence presented to the grand jury may not be challenged if the indictment is facially valid, *see Costello v. United States,* 350 U.S. 359, 361–62, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and the indictment in this case is facially valid. It alleges that the illegal objects of the conspiracy related to "contributions"—that is, to hard money—and it alleges the essential elements of a conspiracy offense. The Court therefore concludes that Mr. Trie has not made a sufficient showing to warrant dismissal of the indictment.

 As for Mr. Trie's request for disclosure of the instructions given to the grand jury, a defendant requesting disclosure of grand jury transcripts must show a "particularized need" for such information. *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 222–23, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *United States v. Oakar,* 924 F.Supp. 232, 246 (D.D.C.1996), *aff'd in part, rev'd on other grounds,* 111 F.3d 146 (D.C.Cir.1997); *United States v. Washington,* 819 F.Supp. 358 (D.Vt.1993), *aff'd* 48

F.3d 73 (2d Cir.1995). Since the indictment is facially valid and Mr. Trie's claim with respect to hard and soft money does not justify dismissal of the indictment, *see supra* at 61–62, Mr. Trie has not established any particularized need for the grand jury instructions. *United States v. Oakar,* 924 F.Supp. at 246; *United States v. Recognition Equip., Inc.,* 711 F.Supp. at 12–13. It of course is conceivable that the grand jury was not instructed that the applicable provisions of FECA apply only to "contributions" as defined by FECA and that they do not apply to "soft money" donations. But the mere suspicion that the grand jury may not have been properly instructed with respect to the legal definition of contribution is insufficient to establish that Mr. Trie is entitled either to dismissal of the indictment or to disclosure of grand jury materials. *See United States v. Buchanan,* 787 F.2d at 487; *United States v. Abdul–Malik,* 903 F.Supp. 550, 553 (S.D.N.Y. 1995). Mr. Trie's motion therefore will be denied.

### III. MOTION TO DISMISS FALSE STATEMENTS COUNTS

 Counts 9–11 charge Mr. Trie with aiding and abetting the making of false statements to a government agency in violation of 18 U.S.C. §§ 1001 and 2(b). The indictment alleges that Mr. Trie "knowingly and willfully" caused the DNC to create and submit false reports to the FEC itemizing the individuals and entities from which the DNC received contributions or donations. Count 9 pertains to the DNC's January 22, 1996 quarterly report to the FEC; Count 10 to the DNC's April 15, 1996 quarterly report; and Count 11 to the DNC's October 15, 1996 quarterly report. The government has specified that the names listed on the reports are the false statements because the reports reflect the names of the alleged conduits who sent checks to the DNC rather than the "true sources" of the funds. For the reasons stated in *United States v. Hsia,* 1998 WL 635848 at *19–28, the Court concludes that Counts 9–11 must be dismissed.

As in *Hsia,* an "Alice–in–Wonderland–like maze of logical leaps and tangled inferences . . . are required in order to find that this

indictment adequately alleges Section 1001 and 2(b) violations." *United States v. Hsia,* 1998 WL 635848 at *20. The quagmire of inferences is further complicated by the fact that the false statements counts of this indictment are silent with respect to Mr. Trie's alleged role in "causing" false statements to be made to the FEC. The indictment alleges only that Mr. Trie "knowingly and willfully . . . caused the treasurer for the DNC to create and submit false reports to the FEC which indicated that lawful contributions were made by individuals to the DNC when in truth and in fact, as the defendant well knew, it was another person and entity that had contributed to the DNC and not the conduits listed in the reports filed with the FEC." Indictment at 28. Mr. Trie's precise role in "causing" the alleged false statements is not at all clear from the indictment. It never specifies whether the government is alleging that Mr. Trie solicited the conduit contributions that allegedly led to the false statements, himself acted as a "conduit," or provided funding for the conduit contributions. While Counts 9–11 specifically incorporate "the allegations contained in paragraphs One through Thirteen of Count One of the Indictment," those paragraphs contain only general information about the DNC, the defendants, the FEC and FECA. They provide no specific allegations with respect to conduct that Mr. Trie is alleged to have taken.[9]

In the Bill of Particulars provided to Mr. Trie, the government does very little to clarify or elaborate upon Mr. Trie's alleged role. The government specifies only that "the defendant caused the individuals . . . to make contributions in their own names to the DNC with personal checks and caused them to be immediately reimbursed in cash, by wire transfer, certified checks, or travelers checks. Defendant caused these contributions to be presented to the DNC when he

knew, in fact, that the purported contributors had been reimbursed." Bill of Particulars at 3. The Bill of Particulars still does not articulate *how* Mr. Trie caused the alleged false statements to be made. For the reasons articulated in *Hsia,* Sections 1001 and 2(b) cannot constitutionally be applied to the actions alleged in this indictment. *See United States v. Hsia,* 1998 WL 635848 at *19–28. Counts 9–11 therefore will be dismissed.

An Order consistent with this Opinions shall be issued this same day.

SO ORDERED.

## ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's Motion No. 1A and Motion No. 1B are DENIED; it is

FURTHER ORDERED that defendant's Motion No. 2 is GRANTED; it is

FURTHER ORDERED that Counts 9–11 of the indictment are DISMISSED; it is

FURTHER ORDERED that the motion of the government to clarify is GRANTED.

SO ORDERED.

## ORDER

This case is before the Court on defendant's motion for leave to file a supplemental motion regarding Count 12. Upon consideration of the motion, the opposition filed by the government and the reply, the Court concludes that there is good cause for Mr. Trie's failure to file a motion regarding Count 12 in his initial filings and that the government would not be prejudiced by allowing him to late file this motion. Accordingly, it is hereby

9. The indictment's reference to paragraphs one through thirteen of Count 1 is confusing. Count 1 is never labeled in the indictment, but the first paragraph of the indictment, under the heading "introductory allegations," is numbered one, and it appears that Count 1 begins with that paragraph. The overt acts alleged as part of Count 1, however, are numbered beginning with paragraph one again, so there are in fact two sets of paragraphs beginning with the number one. *See* Indictment at 1, 8. It appears, however, that Counts 9–11 of the indictment intend to incorporate by reference the first thirteen paragraphs of the indictment, rather than the overt acts paragraphs numbered one through thirteen, since the acts alleged in those overt acts paragraphs all took place in 1994 and the false statements counts relate to 1996.

ORDERED that defendant's motion for leave to file a supplemental motion regarding Count 12 is GRANTED; and it is

FURTHER ORDERED that defendant shall file his supplemental motion regarding Count 12 by October 23, 1998, the government shall file an opposition by November 6, 1998, and the defendant shall file a reply by November 16, 1998.

SO ORDERED.