**Eduardo M. BENAVIDES, Appellant,**

v.

**DRUG ENFORCEMENT ADMINISTRATION, Appellee.**

No. 90–5344.

United States Court of Appeals, District of Columbia Circuit.

Argued April 10, 1992.

Decided June 30, 1992.

As Amended Aug. 30, 1992.

---

Elizabeth M. Brown, with whom Frederick C. Schafrick (appointed by the Court) was on the brief, for appellant. Eduardo M. Benavides, pro se, also entered an appearance for appellant.

John C. Martin, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellee.

Before: MIKVA, Chief Judge, D.H. GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Eduardo M. Benavides, *pro se* and *in forma pauperis,* is an inmate at a Texas state prison in Lovelady, Texas. Invoking the Freedom of Information Act, he asked the Drug Enforcement Agency for records

concerning Hector Perez Rodriquez and Silverio Garcia Meza, whom he says were identified as government informants at his drug trial in 1975. (Mr. Rodriquez testified against him; Mr. Meza was his codefendant). The DEA refused to confirm or deny the existence of records, and the district court upheld the response under exemptions 7(C) and 7(D) of FOIA, 5 U.S.C. § 552. But the district court failed to consider section 552(c)(2), which says that:

> [w]henever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

5 U.S.C. § 552(c)(2).

We hold that the district court erred in failing to consider the applicability of section 552(c)(2); in granting summary judgment although Mr. Benavides raised questions of material fact; and in denying Mr. Benavides's discovery request. Therefore, we reverse and remand.

## I. BACKGROUND

Mr. Benavides was convicted of drug offenses in September, 1975. *United States v. Benavides, et al.*, Crim. No. SA–75–CR–183 (W.D.Tex.1975). On July 10, 1989, he made a FOIA request to the DEA for records relating to two alleged government informants at his trial, whom he identified as Hector Perez Rodriquez and Silverio Garcia Meza. The request sought records about both men, containing "any and all information, to include but not limited to all promises and records of payments for information of assistance, in the investigation and prosecution of drug charges against me."

The DEA informed Mr. Benavides that it had "located no records which are responsive to your request." Mr. Benavides filed an administrative appeal, claiming that DEA agents had testified in the 1975 trial that Mr. Rodriquez had been a government informant. "Accordingly, the DEA's summary denial does not sufficiently explain why this information cannot be released." When the administrative appeal was not decided quickly, Mr. Benavides filed an action in the district court under 5 U.S.C. § 552(a)(6)(A) & (C), and the administrative appeal was terminated as a result.

In his complaint, filed *pro se* and *in forma pauperis*, Mr. Benavides claimed that the DEA was arbitrarily and capriciously withholding the requested records, and sought an order directing their release. The DEA responded by moving for summary judgment. In support of the motion, the DEA offered the declaration of William E. Bordley, an attorney advisor to the FOIA section of the DEA. Mr. Bordley said that DEA's initial response to the FOIA request was wrong, and that the agency should have advised Mr. Benavides that it could neither confirm nor deny the existence of any responsive records. (This is called a Glomar response, after *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C.Cir.1976), which concerned a request for records about the "Glomar Explorer.")

In its supporting memorandum, the DEA argued that confirming or denying the existence of the records would cause the harms cognizable under FOIA exemptions 7(C), which protects against unwarranted invasions of personal privacy, and 7(D), which protects against disclosure of the identities of confidential informants. The DEA argued that confirming or denying the existence of the records on Mr. Rodriquez or Mr. Meza would be tantamount to confirming or denying that each of them had been involved in DEA investigations—information protected by exemption 7(C)—or had been a confidential informant—information protected by 7(D).

The DEA failed to address the applicability of 552(c)(2), which says that when a third party requests "informant records maintained by a criminal law enforcement agency ... the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially

confirmed." Also, the DEA failed to address Mr. Benavides's argument that Mr. Rodriquez's status as an informant had been confirmed at the 1975 trial.

Mr. Benavides filed a motion for leave to conduct discovery and to submit a set of interrogatories aimed at obtaining information about the DEA's interpretation of subsection (c)(2). (He asked, for example, what constituted official confirmation of an informant's status, and how the DEA determines whether an informant's status has been officially confirmed). The DEA responded to the discovery requests by moving for a protective order, arguing that the requested information was not relevant because the DEA was not defending its response on the basis of FOIA exemption (c)(2), but was making an appropriate Glomar response under FOIA exemptions (b)(7)(C) and (D). The district court, without giving reasons, granted the protective order and stayed discovery.

Mr. Benavides then filed a memorandum in opposition to the DEA's motion for summary judgment; and he filed a supporting declaration averring that Hector Rodriquez had testified in the 1975 trial about receiving government money for his cooperation in bringing drug charges against Mr. Benavides, and that Rudolfo Gonzales, a DEA agent, had testified to paying Mr. Rodriquez for the assistance. He attached to the declaration three pages of the 1975 trial transcript in which Mr. Rodriquez described a drug transaction with Mr. Benavides. The declaration also said that the trial judge in the 1975 trial had postponed the sentencing of Mr. Benavides's co-defendant, Silverio Meza, because of Mr. Meza's cooperation with the DEA. Having presented evidence that Mr. Rodriquez and Mr. Meza were "confirmed" government informants, Mr. Benavides argued that the FOIA exclusion did not apply.

The district court, without addressing the points Mr. Benavides raised, granted summary judgment in favor of the DEA. 769 F.Supp. 380. The Court found that the agency had met its burden of showing why the existence of the requested records was exempt from disclosure under FOIA ex-

emptions 7(C) and 7(D). But the district court did not address the applicability of subsection (c)(2) in its opinion.

Mr. Benavides filed a motion for relief from judgment arguing that the court had failed to consider the arguments made in his opposition. The district court denied the motion. Mr. Benavides filed a timely appeal to this Court and asked us to appoint counsel for him. On September 19, 1991, we appointed counsel, denied the DEA's motion for summary affirmance, and asked the parties to address the proper interpretation of 5 U.S.C. § 552(c)(2).

## II. ANALYSIS

### A. *5 U.S.C. § 552(c)(2)*

██ Mr. Benavides argues that the district court erred by failing to address 5 U.S.C. § 552(c)(2), which he says clearly applies to his case. He requested "informant records maintained by a criminal law enforcement agency," the DEA, "according to the informant's name," and he was a "third party." Thus, (c)(2) says that the DEA may treat any records it holds as "not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed."

The only disputed question is what the phrase "not subject to the requirements of this section" means. There are no reported decisions construing the subsection. But we conclude from the text and legislative history that Congress intended subsection (c)(2) to provide express legislative authorization for a Glomar response, in which the agency neither confirms nor denies the existence of records, unless an informant's status has been officially confirmed. Conversely, we conclude that when an informant's status *has been* officially confirmed, the requirements of FOIA govern, and the agency must acknowledge the existence of any records it holds.

The three exclusions of § 552(c) were added to FOIA by the Freedom of Information Reform Act of 1986. Pub.L. No. 99–570, §§ 1801–04, 100 Stat. 3207–48 to –50 (1986). The amendment was the result of negotiations between representatives for

the Department of Justice and the House Government Operations Subcommittee on Government Information, Justice, and Agriculture. Representatives English and Kindness, the chairman and ranking minority member of the House Subcommittee, and Senator Leahy, who introduced the amendment in the Senate, explained the purpose of the exclusions in similar terms. In their jointly prepared statement, Representatives English and Kindness said:

> This provision [FOIA section (c)] provides criminal law enforcement authorities the ability to avoid confirmation of the investigatory status of specific individuals or incidents in responding to FOIA requests. It is a narrow and specific statutory authority for criminal law enforcement agencies to act on the principle that 'an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exemption.' *Gardels v. CIA,* 689 F.2d 1100, 1103 (D.C.Cir.1982), citing *Phillippi v. CIA* 546 F.2d 1009, 1012 (D.C.Cir. 1976), the so-called Glomar case.
>
> . . . . .
>
> The second circumstance where an agency is not required to acknowledge the existence of specific requested documents concerns FOIA requests for informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier. The authority provided under subsection [(c)(2)], however, is limited to those instance in which the request for such informant records is from a third party who specifically requests them by the informant's name or personal identifier. Moreover, *an agency must acknowledge the existence or nonexistence of such records when the informant's status as an informant has been 'officially confirmed.'*

132 Cong.Rec. at H9467 (daily ed. Oct. 8, 1986) (statement of Reps. English and Kindness) (emphasis added; citation omitted).

Senator Leahy's statement, similarly, included the approving citation to our deci-

sions in *Gardels* and *Phillippi* and reaffirmed that same interpretation of subsection (c)(2): "an agency is not required to acknowledge the existence of specific requested documents concern[ing] FOIA requests for informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier," except "when the informant's status as an informant has been 'officially confirmed.'" 132 Cong.Rec. S14295, S14297 (daily ed. Sept. 30, 1986) (Statement of Sen. Leahy).

Rather than offering a different interpretation of the text or legislative history of subsection (c)(2), the DEA simply ignores them. Instead, it argues that the subsection was intended to deal only with a single situation discussed in the Attorney General's Memorandum on the 1986 Freedom of Information Act Amendments (Dec.1987). According to the Memorandum, law enforcement officers were concerned that criminal organizations could circumvent the protections of Exemptions 7(C) and 7(D). If, for example, a crime ring believed that it had been infiltrated by government informers, the ring could force the suspects to execute privacy waivers and could then submit FOIA requests for information about them, or it could force the suspects to submit requests on the organization's behalf. Attorney General's Memorandum at 22–23. To withhold information, a law enforcement agency would be forced to assert Exemption 7(D), which would tell the organization everything it needed to know.

Citing nothing more than the Attorney General's Memorandum, the DEA argues that subsection (c)(2) should be limited to the unusual situation the memorandum describes: a law enforcement agency may invoke the section to confirm or deny the existence of responsive information in its files, even in response to a third party request where a privacy waiver is submitted by the individual concerned. However, the DEA argues, subsection (c)(2) does not *require* a Glomar response, nor does it preclude law enforcement agencies from responding, as the DEA did in this

case, by ignoring (c)(2) entirely and relying upon applicable FOIA exemptions.

We reject the DEA's argument. The Attorney General's Memorandum is not part of the legislative history of the enacting Congress. *Cf. Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (Scalia, J., concurring) ("Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, even in a footnote."). It is not a "contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion." *Aluminum Co. v. Central Lincoln Util. Dist.,* 467 U.S. 380, 390, 104 S.Ct. 2472, 2479, 81 L.Ed.2d 301 (1984) (citations omitted). It is only the Justice Department's post-enactment interpretation of the law, and is entitled to be taken seriously only to the extent that it makes persuasive arguments about what Congress intended. For our part, we are not persuaded by the DEA's argument. Nothing in the text or legislative history of subsection (c)(2) suggests that Congress intended to limit it to the "narrow situation" the Attorney General's Memorandum describes; on the contrary, the Attorney General's interpretation would make (c)(2) either superfluous or meaningless.

The subsection says that the agency may refuse to confirm or deny the existence of records *"unless* the informant's status as an informant has been officially confirmed." It does not say, as the DEA claims, that an agency can invoke or ignore the requirements of FOIA at its pleasure, *whether or not* an informant's status has been officially confirmed. The Attorney General's interpretation, furthermore, is contradicted by the statement of Representatives English and Kindness that "an agency *must* acknowledge the existence or nonexistence of such records when the informant's status as an informant has been 'officially confirmed.'" 132 Cong.Rec. at H9467 (daily ed. Oct. 8, 1986) (statement of Reps. English and Kindness) (emphasis added), and by Senator Leahy's statement to the same effect, 132 Cong.Rec. S14295, S14297 (daily ed. Sept. 30, 1986).

██ After endorsing the Attorney General's interpretation at great length, the DEA seems to concede, in the alternative, that if an informant's identity has been "publicly revealed by a law enforcement agency or by the informant himself," a Glomar response "would not be appropriate." Appellee's Br. at 7. But the DEA emphasizes that the information supplied by the informant would remain subject to withholding pursuant to Exemptions 7(C) and 7(D). Appellee's Br. at 7. We agree entirely with the DEA's final position (which is impossible to reconcile with its earlier one). There is no evidence that Congress intended subsection (c)(2) to repeal or supercede the other enumerated FOIA exemptions, or to *require* disclosure whenever the informant's status has been officially confirmed. The legislative history suggests, in fact, that Congress intended to permit the DEA to withhold documents under 7(C) and 7(D), even if the agency must, under subsection (c)(2) acknowledge their existence. See 132 Cong. Rec. at H9467 (daily ed. Oct. 8, 1986) (statement of Reps. English and Kindness) (if the agency's refusal to confirm or deny the existence of requested records is found to be unjustified on judicial review, the agency must *acknowledge* the existence of any documents and then *justify* its failure to produce them under one of the subsection (b) exemptions).

██ Our conclusion that Congress did not intend to authorize the use of a Glomar response when an informant's status has been "officially confirmed" persuades us that the district court erred as a matter of law when it failed to review the DEA's response under subsection (c)(2), in light of Mr. Benavides's allegations. Therefore, a remand is necessary to enforce the Act.

B. *Summary Judgment*

██ Because we conclude that the district court erred as a matter of law in refusing to consider the applicability of subsection (c)(2), we also conclude that it erred in granting summary judgment. The question of whether an informant's status has been officially confirmed is a material

question in determining the applicability of the subsection (c)(2) exclusion. And we think that Mr. Benavides presented sufficient evidence to make the question of whether Mr. Rodriquez and Mr. Meza had been confirmed as informants a disputed issue of material fact under Fed.R.Civ.P. 56(c).

In his declaration opposing summary judgment, Mr. Benavides alleged the following, which he claimed to know of his own knowledge:

> Hector Perez Rodriquez testified in open court that he had received government money for his cooperation in bringing drug charges against me.

> Rudolfo Gonzales, DEA agent-in-charge testified in open court to paying Hector Rodriquez for his assistance. . . .

> Judge Adrian Spears, in open court, ordered that Silverio Garcia Meza's sentencing be postponed for his cooperation with DEA incident to the prosecution of charges against me[.]

Mr. Benavides supported his declaration by attaching three pages from the transcript of his 1975 trial. The first two pages contained excerpts of a direct examination in which Mr. Rodriquez described a drug transaction with Mr. Benavides, and the third page contained testimony purportedly by Agent Gonzales about a meeting at which he showed Mr. Benavides money furnished by the government for the purchase of cocaine.

We conclude that Mr. Benavdies's initial declaration sufficiently alleges that the Government confirmed the informant status of Mr. Rodriquez at trial. Therefore, summary judgment was inappropriate. *Gardels*, 689 F.2d at 1105. Mr. Benavides's declaration concerning Mr. Meza is supported by less evidence than the declaration concerning Mr. Rodriquez, but we conclude the DEA failed to satisfy its burden of establishing that there was "no genuine issue as to a material fact," Fed. R.Civ.P. 56(c), about his informant status as well. On remand, the district court should consider Mr. Benavides's affidavits in deciding whether Mr. Rodriquez and Mr.

Meza were, in fact, officially confirmed as informants at the 1975 trial.

### C. *Discovery*

 After the DEA moved for summary judgment, Mr. Benavides filed a request for the production of documents and a first set of interrogatories. The DEA moved for a protective order, arguing that the discovery requests were not relevant because a Glomar response was appropriate, and on August 8, 1989, the district court granted the motion. The district court did not give reasons for its decision to stay discovery, but the decision appears to have been based on an erroneous view about the applicability of subsection (c)(2). The court should reconsider its decision on remand.

Mr. Benavides's discovery request was limited to three questions: The first asked whether subsection (c)(2) remained in effect; the second requested the cite for a case; and the third asked what constitutes official confirmation of an informant's status and how the DEA determines if an informant's status has been officially confirmed.

A district court has discretion to protect parties from a discovery request that will cause annoyance, embarrassment, oppression or undue expense, *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E.D.Mich.1979); or to avoid "overly broad fishing expeditions," *Segan v. Dreyfus Corp*, 513 F.2d 695 (2d Cir.1975). Mr. Benavides argues that there was no danger of embarrassment or fishing expeditions. The requested discovery, furthermore, was not oppressive, and there was no risk of accidental disclosure of arguably exempted material, a factor that has been crucial to limitations on discovery in other FOIA cases. *See, e.g. Military Audit Project v. Casey*, 656 F.2d 724, 751 (D.C.Cir.1981).

More significantly, Mr. Benavides argues, the legislative history of the 1986 FOIA amendments shows that Congress recognized the need for discovery in cases arising under subsection (c)(2). Citing this Court's decision in *Phillippi*, for example, Representatives English and Kindness said that an agency's arguments should be sub-

ject to testing by the requester, "who should be allowed to seek appropriate discovery when necessary to clarify the Agency's position or to identify the procedures by which that position was established." 132 Cong.Rec. at H9467 (daily ed. Oct. 8, 1986) (statement of Reps. English and Kindness). They added that:

> The requester's discovery can focus on the relationship between confirmation or denial of the existence of records and the disclosure which the agency seeks to prevent, as well as the process by which the agency seeks to prevent, as well as the process by which it was determined that confirming or denying the existence of the requested records would cause that disclosure.

*Id.* at H9468.

Senator Leahy also cited the *Phillippi* procedures, 132 Cong.Rec. at S14297 (daily ed. Sept. 30, 1986), in which this Court said explicitly that the requester "might inquire as to the process by which it was determined that confirming or denying the existence of the requested records would constitute greater '[o]fficial acknowledgement ...' than has already taken place." *Phillippi*, 546 F.2d at 1014–15 & n. 12.

Mr. Benavides's third discovery request, at least, seems to fall squarely within the categories approved in the legislative history of subsection (c)(2). On remand, the district court should reconsider its decision to grant a protective order in light of our decision today, and should grant any further discovery it considers appropriate.

### III. CONCLUSION

The district court erred by failing to consider the applicability of section 552(c)(2); by granting summary judgment even though Mr. Benavides raised questions of material fact; and by denying Mr. Benavides's discovery requests. Therefore, we reverse the judgment and remand to the district court with instructions to determine, after appropriate discovery, the applicability of subsection (c)(2) of FOIA to Mr. Benavides's request. If the court determines that the informant status of Mr. Rodriquez or Mr. Meza (or both) has, in fact, been officially confirmed, it should require the DEA to confirm or deny the existence of the requested records. And if the records exist, the district court should decide whether the DEA must produce them to Mr. Benavides, or whether they remain protected by an exemption in subsection (b) of FOIA.

*So Ordered.*