**UNITED STATES of America,
Appellant,**

v.

**Pornpimol KANCHANALAK a/k/a Pornpimol Parichattkul, and Duangnet Georgie Kronenberg, Appellees.**

Nos. 99–3019 & 99–3034.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1999.

Decided Oct. 8, 1999.

---

Jonathan Biran, Attorney, United States Department of Justice, argued the cause for appellant. With him on the briefs was John P. Kacadas, Attorney, United States Department of Justice. Eric K. Yaffe, Attorney, entered an appearance.

Reid H. Weingarten argued the cause for appellees. With him on the brief were Erik L. Kitchen, Brian M. Heberlig, and James Hamilton. Michael Spafford entered an appearance.

Before: WALD, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

█ The government charged Pornpimol "Pauline" Kanchanalak (aka Pornpimol Parichattkul) and Duangnet "Georgie" Kronenberg with a scheme to disguise illegal hard money contributions and soft money donations from foreign nationals and corporations to national and state political committees. Defendants were also alleged to have caused political committees to file reports with the Federal Election Commission ("FEC") falsely identifying lawful permanent residents as the source of funds that actually originated with foreign nationals and corporations in violation of 18 U.S.C. §§ 2 (b), 1001. The government argued that § 441e of the Federal Election Campaign Act ("FECA") prohibits any infusion of money from foreign nationals into federal, state, and local elections and that section 104.8 of the FEC regulations requires that political committees report the true source of their contributions and donations. Defendants asserted that as to both hard and soft money, political committees were not required to report the true sources of their receipts, and as to soft money, FECA did not restrict such donations by foreign nationals.[1]

---

1. Defendants now concede that in *United States v. Hsia*, 176 F.3d 517 (D.C.Cir.1999), we rejected their contention that political committees are not required to report the true sources of their hard money but ask us to reconsider that decision. We have no author-

They also argued that the FEC reporting regulation could not reasonably be read to require disclosures of the original sources of soft money receipts.

Based on its prior rulings in *United States v. Hsia* and *United States v. Trie*, the district court dismissed the hard money counts, determining that the government needed to demonstrate affirmative conduct beyond using conduit checks for a false statement prosecution. *See United States v. Hsia*, 24 F.Supp.2d 33 (D.D.C. 1998), *rev'd*, 176 F.3d 517, 523–24 (D.C.Cir. 1999); *United States v. Trie*, 23 F.Supp.2d 55 (D.D.C.1998). The district court also dismissed the soft money counts, holding that the disclosure regulation, section 104.8(e), did not require political committees to reveal the original sources of their soft money.

■ This court subsequently reversed the district court's ruling in *Hsia*, finding that, in fact, the government had sufficiently alleged affirmative conduct for a false statement prosecution by charging that the defendant utilized conduit checks, and that FECA requires the "true source" of hard money to be reported. *See United States v. Hsia*, 176 F.3d 517 (D.C.Cir. 1999). On the basis of that ruling, the government seeks reinstatement of the hard money counts in this case. We agree that our decision in *Hsia* mandates reinstatement of the hard money false statement counts, and thus we summarily reverse the district court's order with respect to those counts.

We also find that the FEC regulation, section 104.8(e), prohibits the reporting of conduit contributions with respect to soft money and that § 441e of FECA also prohibits foreign soft money donations. Accordingly, we reverse the judgment of the district court with· respect to the soft money counts as well.

## I. BACKGROUND

Defendants, Pauline Kanchanalak and Duangnet Kronenberg, were charged with "knowingly and willfully caus[ing] the submission of material false statements to the FEC." *See* Superceding Indictment, at 24. Defendants are officers of Ban Chang International (USA) Inc. ("BCI USA"), a foreign corporation. Kanchanalak is neither a citizen nor a permanent resident of the United States. Kronenberg is a permanent resident of the United States. The contributions in question are checks made out to political committees and signed by permanent residents of the United States, even though the signing individuals were not the actual source of the donated funds.

On November 13, 1998, a federal grand jury issued an eighteen count superceding indictment against defendants. The indictment charged violations of FECA, 2 U.S.C. §§ 431 *et seq.*, and regulations issued by the FEC pursuant to FECA. The indictment generally alleges a scheme in which defendants illegally provided both "hard money contributions" and "soft money donations" to the Democratic National Committee ("DNC" or "the Committee") and other political committees.[2] "Hard

---

ity to do so. *See LaShawn v. Barry*, 87 F.3d 1389, 1396 (D.C.Cir.1996) ("One three-judge panel ... does not have the authority to overrule another three-judge panel of the court.... That power may be exercised only by the full court.").

2. A "political committee" is defined under FECA as follows:

> (A) any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes

expenditures aggregating in excess of $1,000 during a calendar year; or

> (C) any local committee of a political party which receives contributions aggregating in excess of $5,000 during a calendar year, or makes payments exempted from the definition of contribution or expenditure ... in excess of $5,000 during a calendar year, or makes contributions aggregating in excess of $1,000 during a calendar year or makes expenditures aggregating in excess of $1,000 during a calendar year.

money" refers to funds that have been deposited by the Committee into a "federal account" and are used to finance federal election campaigns. "Soft money" refers to funds that are deposited into a "non-federal" account and are supposed to be used for, among other things, state and local campaigns. *See Trie,* 23 F.Supp.2d at 55. Defendants are alleged to have illegally used conduits to donate to the Committee both hard and soft money funds that originated with foreign nationals and corporations. The conduits were Duangnet Kronenberg and Praitun Kanchanalak, a relative of both defendants and an unindicted co-conspirator.[3]

More specifically, Count One charges that defendants engaged in a conspiracy to defraud the United States by disguising the fact that the true source of funds contributed to the DNC was BCI USA. *See* Appendix ("App.") 60–82; Superceding Indictment ¶¶ 1–66. Counts Two through Fourteen charge that defendants knowingly and willfully caused the DNC and other political committees to file false reports with the FEC, which erroneously identified the sources of contributions and donations, in violation of 18 U.S.C. §§ 2(b), 1001.[4] *See* App. 83–85, Superceding Indictment ¶¶ 1–2. The false statements were contained in thirteen reports filed with the FEC; each report is the subject of a separate count.

Counts Two through Four, Six through Eight and Thirteen of the superceding indictment were based solely on hard money "contributions."[5] The remaining false statement counts were based either partly or wholly on soft money funds that were not deposited into a federal account. Defendants sought dismissal of both the hard and soft money counts, arguing that under 18 U.S.C. §§ 2(b), 1001, the government had failed to demonstrate adequately that defendants "caused" the submission of false statements. Additionally, on the soft money counts, defendants argued that soft money conduit contributions—even from foreign nationals—were not prohibited under FECA.

On December 31, 1998, the district court, largely agreeing with the defendants, dismissed Counts Two through Four and Seven through Fourteen. *See United States v. Kanchanalak,* 31 F.Supp.2d 13, 14 (D.D.C.1999) ("*Kanchanalak I*"). The district court's decision was based on its own prior reasoning in *United States v. Hsia,* 24 F.Supp.2d at 33, and *Trie,* 23 F.Supp.2d at 55. In both *Hsia* and *Trie,* the government had alleged only that the defendants signed conduit checks, or solicited others to act as signers for conduit checks. The court found that merely signing (or soliciting others to sign) checks was not sufficient to demonstrate that the defendants had "caused" the making of false statements

2 U.S.C. § 431(4).

**3.** The indictment alleges that the defendants caused political committees to receive checks signed "P. Kanchanalak," leading political committees to believe that they were being made by Pauline Kanchanalak, even as they were being drawn on Praitun Kanchanalak's account. *See* Appendix at 67.

**4.** Section 1001 currently provides, in relevant part, that:

 (a) Whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully ... makes any materially false, fictitious, or fraudulent statement or representation ...

shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1001. Some counts allege violations of the previous version of § 1001. However, the differences between these versions are not relevant to the appeal.

 Section 2(b) provides: "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b).

**5.** A contribution is defined under FECA's definitional provision as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i).

about the actual source of the contributions.[6] In *Hsia*, it also found that the "statements" at issue were literally true, since the check writers were a source (if not the only source) of the contributed funds. In *Kanchanalak I*, the court found that the allegations were "virtually indistinguishable from the allegations at issue in *Hsia* and *Trie*." *Kanchanalak I*, 31 F.Supp.2d at 14. Again, the government had failed to allege any conduct that could satisfy the necessary causal elements of a violation under 18 U.S.C. §§ 2(b), 1001. In *Kanchanalak I*, the district court did not reach the issue of whether there was a basis—statutory or otherwise—for the government to allege false statements at all with respect to soft money.[7]

On February 3, 1999, in *United States v. Kanchanalak*, 41 F.Supp.2d 1 (D.D.C.1999) ("*Kanchanalak II*"), the district court dismissed all of the remaining false statement counts as to Ms. Kanchanalak and all but one as to Ms. Kronenberg. Even as to those counts for which the government had sufficiently met its burden of alleging "affirmative conduct," the district court found that there was an additional reason supporting dismissal, namely, the inapplicability of FECA to soft money.

The court found only one provision in FECA that arguably provided a basis for alleging a false statement, namely § 441f, which prohibits contributions in another person's name, and that indisputably applied only to hard money.[8] In the court's words, "[o]n the thin reed of Section 441f, the government ... has a plausible argument that a report submitted by a political committee to the FEC that lists the identity of a 'conduit' or a person other than the true source of a contribution contains a false statement." *Kanchanalak II*, 41 F.Supp.2d at 7 (internal quotations omitted). However, that argument "relied heavily on the definitions and operation of FECA, definitions that apply only to hard money 'contributions' regulated by FECA." *Id.* Although FECA requires political committees to report their hard money contributions, the court could find no corresponding FECA provision requiring political committees to report · soft money donations. *Id.* (discussing 2 U.S.C. § 434 (b)(2)(A)).

The only reporting requirement directly applicable to soft money donations was 11 C.F.R. § 104.8(e), which the court characterized as a "stand alone provision in the regulations." *Id.* at 8. However, that provision in "the regulations provided no indication of whether a national party committee is obligated to report the 'true source' of any such donation"; thus the court said that the government "lacks any basis to argue that the statute and regulations require a political committee to list the names of 'true sources' of soft money donations in reports to the FEC." *Id.* Since neither FECA nor FEC regulations required committee treasurers to report

---

6. In *Hsia* and *Trie*, the district court said that the indictment's lack of specificity in this regard was constitutionally impermissible, given that it charged conduct in an area which implicated First Amendment considerations. The court found that "[t]he combination of First Amendment interests at stake and the threat of a criminal prosecution necessitates a close examination of any indictment to ensure that the statutes utilized are neither overly vague nor overly broad in their language or in their application." *Hsia*, 24 F.Supp.2d at 56. This court later rejected this vagueness argument, holding that the application of the statute to the conduit check situation was not so broad so as to offend the First Amendment. *See Hsia*, 176 F.3d at 523.

7. In *Kanchanalak I*, the district court declined to dismiss some disputed counts, ordering the parties to file supplemental briefs indicating whether these remaining counts might survive *Hsia*. *See Kanchanalak I*, 31 F.Supp.2d at 15.

8. Section 441f, entitled "[c]ontributions in name of another prohibited," provides that:

No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person.
2 U.S.C. § 441f.

the "true sources" of soft money donations, the court reasoned, defendants had not "caused" political committees to issue "false statements," and, therefore, had not violated 18 U.S.C. §§ 2(b), 1001.

After the district court ruled in *Kanchanalak I* and *II*, this court reversed in large part the district court's decision in *Hsia*. *See Hsia*, 176 F.3d at 517. In *Hsia*, we rejected the district court's ruling that knowingly engaging in conduit check writing was not enough to "cause" a false statement to be made. *Id.* at 522–23. We found that § 434(b) of FECA requires political committees to report the "true source" of hard money contributions; thus, statements identifying conduits as the source of funds were not "literally true." *Id.* at 523–24.

The government now appeals the dismissal of the hard money counts in *Kanchanalak II* on the grounds that its reasoning was explicitly rejected in our *Hsia* decision. The government also seeks reinstatement of the soft money counts on the theory that the FEC reporting regulation, section 104.8(e), requires political committees to report the same information for soft money that they report for hard money, including the true sources of their receipts.

## II.   DISCUSSION

### A.   *Hard Money Counts*

Our reasoning in *United States v. Hsia*, 176 F.3d 517 (D.C.Cir.1999), mandates reinstatement of the hard money counts in this case. In *Hsia* we found that "the simple interposition of conduits to sign the checks is certainly enough to 'cause' a committee to make false statements in its report." *Id.* at 523. We also held that FECA requires political committees to identify the true source of hard money contributions. Therefore, if committees

"did not report the true sources, their statements would appear to be false." *Id.* at 524.

In these respects, this case is indistinguishable from *Hsia*. As in *Hsia*, defendants are alleged to have acted as conduits or utilized others as conduits in making contributions to political committees in federal elections. By thus causing political committees to report conduits instead of the true sources of donations, defendants have caused false statements to be made to a government agency. Accordingly, we summarily reverse the district court's orders dismissing the false statement counts predicated on hard money contributions.

### B.   *Soft Money Counts*

#### 1.   *The Soft Money Reporting Regulation*

The validity of the false statement prosecutions based on conduit soft money donations ultimately turns on whether the FEC's soft money regulation, 11 C.F.R. § 104.8(e), is read to require political committees to report the "true" sources of their soft money donations. As the district court correctly noted, there is no soft money counterpart to § 441f in FECA itself, which prohibits conduit transfers of "contributions," *i.e.*, hard money. We note at the outset, however, that defendants do not attack the FEC's authority under the Act to promulgate regulations that address the disclosure of soft money donations.[9] However, defendants do contest the FEC's interpretation of section 104.8(e) as a valid basis for a false statements prosecution.

█    We first discuss the standard under which we review the FEC's interpretation of its soft money disclosure regulation, keeping well in mind that this interpretation must also satisfy due process notice requirements of a criminal conviction for false statements. In *Paralyzed Veterans*

---

**9.** FECA explicitly grants the FEC broad powers to administer its duties under the Act. *See, e.g.,* 2 U.S.C. § 437c(b)(1) (granting FECA the authority to formulate general poli-cy with respect to the administration of FECA); *accord* 2 U.S.C. §§ 437d(a)(8), 437d(e) & 437g(a).

*of America v. D.C. Arena, L.P.,* 117 F.3d 579, 584 (D.C.Cir.1997) (citations omitted), we said:

> Agency interpretations of their own regulations have been afforded deference by federal reviewing courts for a very long time and are sustained unless "plainly erroneous or inconsistent" with the regulation. It is sometimes said that this deference is even greater than that granted an agency interpretation of a statute it is entrusted to administer.

We have followed that standard in FEC cases, explaining:

> The Supreme Court, we note, explicitly concluded in *DSSC [FEC v. Democratic Senatorial Campaign Committee]* "that the [Federal Election] Commission is precisely the type of agency to which deference should presumptively be afforded."

*John Glenn Presidential Comm., Inc. v. FEC,* 822 F.2d 1097 (D.C.Cir.1987) (citing *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981)); *see also Fulani v. FEC,* 147 F.3d 924 (D.C.Cir.1998) (FEC entitled to "substantial deference" when interpreting own regulation). Quite apart from the substantial deference that we owe the agency, we find it eminently reasonable for the FEC to interpret section 104.8(e) to require political committees to report the true source of their soft money donations.

We begin with the language of the provision itself. *See Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). Section 104.8(e) provides, in relevant part, that:

> National party committees shall disclose in a memo Schedule A information about each individual, committee, corporation, labor organization or other entity that donates an aggregate amount in excess of $200 in a calendar year to the committee's non-federal account(s). This information shall include the donating individual's or entity's name, mailing address, occupation, or type of business, and the date of receipt and amount of any such donation.... The memo entry shall also include, where applicable, the information required by paragraphs (b) through (d) of this section.

11 C.F.R. § 104.8(e).

There can be no doubt, and indeed the district court acknowledged, that section 104.8(e) imposes a reporting requirement with respect to soft money that includes the identity of the "donating individual[ ]," as well as, "where applicable," the information required for hard money sources in section 104.8(b)-(d).[10] The district court, however, focused on the fact that "donates" is nowhere defined in the regulation (or in FECA), and does not have an ordinary meaning that confined it to the true source of the donated funds. In the district court's words:

> [T]he regulations provide no indication of whether a national party committee is obligated to report the "true source" of any such donation. In fact, the word "donates" is never defined in either the statute or regulations. The government therefore lacks any basis to argue that the statute and regulations require a political committee to list the names of

---

**10.** The district court deemed it a "stand alone provision in the regulations," not rooted in any particular provision within the FECA. *Kanchanalak II,* 41 F.Supp.2d at 7. We are not sure why this is relevant. We also point out that in its effort to locate a statutory source for the prohibition against soft money conduit contributions, the district court discussed only 2 U.S.C. § 441f, the provision which prohibits hard money contributions in the name of another, and which it found was not applicable to soft money. *See id.* Notably, the district court opinion never addressed § 441e, which proscribes contributions from foreign nationals, as a potential source for the statutory prohibition on at least some soft money conduit contributions. One reason it may not have done so is that it had previously found in *Trie* that, contrary to the FEC's interpretation, § 441e is inapplicable to soft money.

"true sources" of soft money donations in reports to the FEC.

*Id.*

Defendants reiterate here the district court's reasoning, concluding that "an individual who writes a soft money donation check to a committee literally constitutes a 'donating individual' or an individual that 'donates' to the committee's non-federal account, even if that individual is in fact reimbursed for the donation." Br. of Appellees, at 11–12.

That proposition does not seem so apparent to us. To donate ordinarily signifies the act of giving away something over which the giver has control or sovereignty. Thus a donation is defined, *inter alia*, as "a formal grant of sovereignty or dominion." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 672 (1976). And indeed in *Hsia,* this court rejected a similarly restrictive definition of persons who "make the contribution" in the case of hard money, declaring that the "demand for identification of the 'person who makes the contribution' is not a demand for a report on the person in whose name money is given; it refers to the true source of money." *Hsia,* 176 F.3d at 524. We see no critical distinction between the ordinary meaning of the terms "contribute" and "donate" in that respect.[11]

There is, however, an even more crucial sentence in section 104.8(e) that validates the FEC's interpretation, namely, the requirement that "the memo entry shall also include, where applicable, the information required by paragraphs (b) through (d) of this section." 11 C.F.R. § 104.8(e). Thus, subsection (e), by its own terms, cannot be read in isolation, but must be read to incorporate (unless inapplicable) the earlier hard money disclosure requirements of paragraphs (b) through (d). Among those provisions is subsection (c), which provides that: "*[a]bsent evidence to the contrary,* any contribution made by check, money order, or other written instrument shall be reported as a contribution by the last person signing the instrument." 11 C.F.R. § 104.8(c) (emphasis added).[12] The incorporation of this disclosure provision into section 104.8(e) is significant. Its language is transparent; a committee may not report that a signer is the actual source of funds if it is aware that signer is not the source.[13] The plain implication of this is that a signer, who through a knowing conduit transaction, causes a committee to make an erroneous identification by withholding "evidence to the con-

11. We recognize that because of the special definition of contribution in the Act, § 441f prohibits conduit contributions of hard money only. But this limitation on the scope of § 441f does not upset the ordinarily synonymous meanings ascribed to both terms.

12. The district court did refer to subsection (c) in addressing the hard money reporting requirements in *Hsia,* but limited its application to committee treasurers. *Hsia,* 24 F.Supp.2d at 59 (noting that the provision "implies that if there is 'evidence to the contrary' of which the political committee is aware, the committee may not report the contribution as having been made by the last person signing the instrument. The FEC regulation, if not the statute itself, therefore implies that the term 'contributor' is not synonymous with the phrase 'the last person signing the instrument' and that the political committee is supposed to identify the 'true source' of a contribution if it knows the true source.").

The district court thus found that while 11 C.F.R.§ 104.8 (c) may impose obligations on the committee treasurer, it does not impose the same obligation on a donor, absent a knowing conspiracy with the treasurer to conceal the true source.

In *Kanchanalak II,* the district court acknowledged subsection (c) in a footnote, but failed to draw the connection we find between subsection (c) and subsection (e). *See Kanchanalak II,* 41 F.Supp.2d at 7 n. 6.

13. Our analysis in *Hsia* is relevant here again. If political committees did not report the true sources of their donations, their statements would appear to be false. Even if the defendants did not themselves make false statements to the FEC (and are not being charged as such), "the simple interposition of conduits to sign the checks is certainly enough to 'cause' a committee to make false statements in its report." *Hsia,* 176 F.3d at 523.

trary," may be held responsible for causing the false statement.

Defendants offer one counter-argument. The term "contribution" contained in 11 C.F.R. § 104.8(c) is defined as "any gift ... for the purpose of influencing any election to *Federal office*." 2 U.S.C. § 431(8)(A) (emphasis added). Since the term "contribution" in subsection (c) is thus limited to hard money used for federal elections, the entire subsection (c) by its own terms is similarly limited and hence not "applicable" to the soft money reporting requirements of section 104.8(e).

A closer and more contextual reading of section 104.8 and its various subsections disposes of this argument. Subsections (b), (c), and (d) of section 104.8, all incorporated by reference into subsection (e), address requirements for "contributions." On defendants' apocalyptic reasoning none would ever be applicable to subsection (e); this reading in turn would render the entire incorporation clause referring to subsections (b) through (d) superfluous. *See Benavides v. DEA*, 968 F.2d 1243, 1248 (D.C.Cir.1992) (declining to interpret a provision so as to render it superfluous). Surely it is not reasonable to think that the FEC would have incorporated other subsections into subsection (e), when "applicable," if it knew or intended that none of these subsections could ever apply to soft money. The more reasonable interpretation by far is that these hard money disclosure requirements apply to soft money reporting unless there is an obvious reason why they should not.[14]

■ Not only is the FEC's construction of section 104.8(e) reasonable, but it also advances the articulated concerns that impelled the FEC to adopt the regulation in the first place. *See Methods of Allocation Between Federal and Non-Federal Accounts*, 55 Fed.Reg. at 26,058.[15] Adopted in 1990 as part of a "comprehensive set of allocation rules" drafted to "provide additional safeguards against the use of impermissible [soft money] funds in federal election activity by expanding the disclosure of receipts and disbursements by national party committees," section 104.8, in particular, was "[r]evised [to] ... require national party committees to disclose the source and amount of receipts by their non-federal accounts ... as well as by their federal accounts under the current rules." The revised section was retitled "Uniform Reporting of Receipts," *id.*, "to reflect its broadened application" to both hard and soft money. To that end, "[n]ew paragraph (e)," the FEC explained, "require[s] national party committees to also disclose information about receipts to their non-federal accounts." *Id.* This "broadened disclosure" was designed to "help eliminate the perception that prohibited funds [soft money] have been used to benefit federal elections and campaigns." *Id.*

Given our druthers, we might have wished that the FEC elaborated in greater detail just why identifying the true source of soft money would prevent the reality or

---

14. It bears noting that the FEC has not been particularly consistent when it has employed the term "contribution" in regulations and opinions. Indeed, the term is often used synonymously with "donation." *See, e.g.*, 11 C.F.R § 113.3 (referring to "funds *donated* ... to a candidate for federal office"); 11 C.F.R. § 115.2 (a) (prohibition on federal contractor "contributions" not applicable to "*contributions* ... in connection with *State* or *local* elections"); FEC Advisory Op.1998–11 (Sept. 3, 1998), 1998 WL 600994, at *3 (discussing "*contributions*" in connection with *State* and *local* elections"); FEC Advisory Op.1997–14 (Aug. 22, 1997), 1997 WL 529606, at *2 (discussing "*contributions*" to

"*State* party building funds") (emphasis added in all citations).

15. In interpreting a regulation, we may consider a contemporaneous statement of the agency's policy reasons for promulgating it. *See Sierra Pac. Power v. EPA*, 647 F.2d 60, 65 (9th Cir.1981) ("An appellate court will ordinarily give substantial deference to a contemporaneous agency interpretation of a statute it administers. When dealing with an interpretation of regulations the agency has itself promulgated, 'deference is even more clearly in order.' ") (quoting *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)).

the perception of soft money being illicitly used for federal election purposes. We do know that the overall design of the new allocation and reporting requirements was "to track the flow of non-federal funds transferred into federal accounts" to insure they were used only for legitimate allocation of joint expenses. It does not seem to require any leap from that premise to the conclusion that tracking such a flow will often be easier if the true source of the soft money is identified. For instance, the identity of the real donor may suggest to the FEC monitor that special scrutiny is in order to insure the pristineness of the federal side of the ledger. Ultimately, however, we know of no bar to an agency's interpretation of a prophylactic disclosure rule, such as this one, that may overshoot the mark a bit, so long as it stays in reasonable range.[16]

To cut to the chase, we find that the language and purpose of section 104.8(e) permits only one reasonable interpretation. In an effort to enhance its ability to prohibit the illegal commingling of hard and soft money receipts, the FEC required identifying information for the donors of both to assist it in tracking the flow of funds between the two.

### 2. Fair Notice

■ That the FEC's interpretation of its disclosure regulation as applying to the true source of soft money is a reasonable one does not end the matter. For to support a criminal prosecution, it must give fair notice to the subject of what conduct is forbidden. The Due Process Clause of the Fifth Amendment prohibits punishing a criminal defendant for conduct "which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 614, 74 S.Ct. 808, 98 L.Ed. 989 (1954). The Supreme Court has held that this "fair warning" requirement

prohibits application of a criminal statute to a defendant unless it was reasonably clear at the time of the alleged action that defendants' actions were criminal. *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

■ The Superceding Indictment does not offend the principles of due process and fair notice because the defendants should reasonably have understood federal laws to require committees to report the true source of soft money donations. Additionally, they should reasonably have understood that disguising those true sources would cause false statements to be made in violation of 18 U.S.C. §§ 2(b), 1001. The court in *Hsia*, which addressed the hard money reporting requirement, found that this "case fits comfortably within the clear and previously accepted scope of §§ 2(b) and 1001." *Hsia*, 176 F.3d at 523. We find likewise in this case. In arguing that §§ 2(b), 1001 may not comfortably be applied to soft money reporting, defendants assert that it was previously unclear that section 104.8(e) required real source identification for soft money, thus it would violate the due process requirement of clear notice to hold them criminally accountable now. We disagree.

Section 104.8(e) explicitly covers soft money; the FEC has interpreted it as such since its promulgation and announced its prophylactic purpose at that time. It also expressly incorporated several hard money disclosure requirements laid down in earlier subsections (b) through (d) into the subsection (e) requirement. One of those, subsection (c), unambiguously permits committees to report the name of the signer of a check as the donor only if there is no "evidence to the contrary." If an individual possesses that contrary evidence and participates in the conduit transaction

---

16. Defendants also counter that "no purpose would be served by requiring the reporting of the original source of soft money," given that "soft money donations in the name of another are not prohibited by FECA." Br. of Appel-

lees, at 12, n.13. This ignores the FEC's longstanding interpretation of § 441e as barring foreign national contributions of soft money in section 110.4(a).

by signing the check himself or conspiring with another to do so, he is "causing" a false statement to be made to the FEC in violation of §§ 2(b), 1001. That is clear notice enough.

### 3. *The Foreign National Prohibition*

The government offers a further justification for the soft money reporting requirement. It contends that § 441e of FECA bars foreign nationals from making both hard money contributions and soft money donations, indirectly or directly, for use in either federal or local elections. This statutory bar, it says, provides a powerful justification for the true source reporting requirement of soft money—that is, to ensure that United States citizens and permanent residents are not conduits for soft money that originates with foreign nationals. Defendants resolutely maintain that the statutory language of § 441e restricts that provision's scope to federal elections.

■ In determining whether an agency's interpretation of a statute is appropriate, we apply *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[17] Under *Chevron*, the court examines whether the statute speaks "directly . . . to the precise question at issue." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. If the statute "has not directly addressed the precise question at issue," then the agency's construction, if reasonable, should be honored. *Id.*

■ Through a promulgated regulation and an advisory opinion, the FEC has indicated that § 441e prohibits soft money donations as well as hard money contribu-

**17.** Defendants argue that this court should not give *Chevron* deference to the FEC's interpretation of an ambiguous statute in a criminal proceeding. Defendants' support for this proposition is scant. That criminal liability is at issue does not alter the fact that reasonable interpretations of the act are entitled to deference. *See Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 703–05, 115 S.Ct. 2407, 132 L.Ed.2d 597

tions by foreign nationals. *See, e.g.*, 11 C.F.R. § 110.4(a); FEC Advisory Opinion, 1987–25 (Sept 17.1987), 1987 WL 61721. Section 441e provides, in relevant part, that:

> It shall be unlawful for a foreign national directly or through any other person to make any contribution of money or other thing of value, or to promise expressly or impliedly to make any such contribution, in connection with an election to any political office; or in connection with any primary election, convention, or caucus held to select candidates for any political office; or for any person to solicit, accept, or receive any such contribution from a foreign national.

2 U.S.C. § 441e.

Although the text by itself might appear comprehensive enough to encompass soft money, the defendants point to the use of the word "contribution" in that section; contribution is defined elsewhere in the Act as applying to hard money for federal elections. The term "contribution," as we have noted, includes: "(i) any gift . . . made by any person for the purpose of influencing any election for Federal office. . . ." 2 U.S.C. § 431(8)(A)(i).

This definition, say defendants, limits the scope of § 441e to federal elections. Principles of consistent usage in statutory interpretation must, however, be applied consistently. While defendants focus exclusively on the term "contribution," they ignore the phrase "any political office" which appears not only in § 441e but also in its neighboring provision, § 441b. Section 441b distinguishes between contributions to federal offices and those tendered to "any political office."[18] Thus while § 441b regulates the manner in which

(1995) (according *Chevron* deference to a Department of the Interior regulation which interpreted a criminal provision of the Endangered Species Act).

**18.** Section 441b provides, in relevant part, that:

> (a) It is unlawful for any national bank, or any corporation organized by authority

most corporations and labor organizations may contribute to federal offices, that same provision limits the contributions that nationally chartered banks and corporations may make "in connection ... with *any political office.*" 2 U.S.C. § 441b (emphasis added). By distinguishing federal offices from "any political office," Congress plainly intended to reach certain contributions made to state and local offices. Guided by the same canon of consis-

tent usage that the defendants invoke on behalf of the term contribution, we think it telling that Congress employed the phrase "any political office" when defining the scope of the foreign-national contribution provision. Accordingly, the language of § 441e does not unambiguously cabin its reach to only federal offices.[19]

The legislative history and structural scheme of the statute tend to buttress the

of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or any corporation whatever, or any labor organization, to make a contribution or expenditure in connection with any election at which presidential and vice presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to, Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices....

(b)(2) For purposes of this section ... the term "contribution or expenditure" shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value ... to any candidate, campaign committee, or political party or organization, in connection with any election to any of the offices referred to in this section....

2 U.S.C. § 441b.

**19.** Defendants attempt to answer the government's § 441b argument by noting that § 441b(b)(2) carries its own definition of the term contribution, distinct from that contained in § 431(8)(A)(i). It defines a contribution as "any direct or indirect payment, distribution, loan, advance, deposit or gift of money, or any services, or anything of value ... to any candidate, campaign committee, or political party or organization, in connection with any election to any of the offices *referred to in this section.*" 2 U.S.C. § 441b (b)(2) (emphasis added). The question then becomes what are the offices referred to in this section. Subsection (a), for example, prohibits national banks and federally chartered corporations from making contributions "in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office." 2 U.S.C. § 441b(a).

Defendants concede that the term "any political office" in § 441b(a) must include non-federal offices since elsewhere in the same subsection, the statute prohibits "any corporation whatever" (presumably, including, but not limited to federally chartered corporations) from making a contribution in connection with elections to federal offices. Presumably, if Congress had intended to prohibit only the entities referenced in subsection (a) (including national banks and federally chartered corporations) from making federal contributions, the clause concerning national banks and federally chartered corporations would have been surplusage.

But then defendants go on to argue that if Congress had intended to modify the Act's generic definition of "contribution" for purposes of § 441e to cover non-federal elections, it could have done so explicitly as it did with § 441b. In response to this, the government notes that §§ 441b and 441e were both preceded by provisions in Title 18, which were moved to Title 2 as part of the amendments to FECA in 1976. The government argues that § 441b's special definition of the term contribution is a vestigial remainder from the preceding provision, 18 U.S.C. § 610, which Congress inadvertently failed to remove. It also points out that there was no definition of "contribution" in the predecessor to § 441e (which was part of the Foreign Agents Registration Act ("FARA")).

Candidly we see no way to definitively resolve this statutory puzzle other than to declare an ambiguity and move on to our traditional rules for resolving ambiguities.

As a final note, we do think both defendants and the district court make too much of the definition of "contribution" as controlling the interpretation of every section in which it appears. Congress itself performed with no such consistency. Although contribution by itself does mean contribution to a federal candidate, Congress in many sections of the Act added contributions "for Federal office" although that seems surplusage. In contrast in others like §§ 441e and 441b, it used contribution in conjunction with the phrase "for

FEC's broader interpretation of section 441e but can hardly be read as making its case conclusively. Section 441e was preceded by 18 U.S.C. § 613, a subsection of the Foreign Agents Registration Act ("FARA"), which made it unlawful for "agents of foreign principals" to "knowingly mak[e] any contribution of money or other thing of value ... in connection with an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office." 18 U.S.C. § 613 (repealed 1976). Nothing in the committee report that accompanied the original passage of section 613 indicated that Congress intended for the phrase "an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office" to be restricted to federal office.[20] And significantly, this relevant language of § 441e has remained identical through multiple amendments to FARA and to the provision itself, when the 1976 amendments moved the provision from Title 18 to FECA. The 1976 FECA Amendments Report said "[section 441e] is the *same* as Section 613." H.R. CONF. REP. No. 94–105, at 67 (1976) (emphasis added). Ultimately, neither the plain language of § 441e nor its legislative history reveals Congress's unambiguous intent.

In the face of such statutory ambiguity, we are required to reach *Chevron*'s second prong, which requires judicial deference to an agency's reasonable interpretation. Indeed, this court has noted in several opinions that the FEC's express authorization to elucidate statutory policy in administering FECA "implies that Congress intended the FEC ... to resolve any ambiguities in statutory language. For these reasons, the FEC's interpretation of the Act should be accorded considerable deference." *Orloski v. FEC*, 795 F.2d 156, 164 (D.C.Cir. 1986); *accord Fulani v. FEC*, 147 F.3d 924 (D.C.Cir.1998); *Republican Nat'l Comm. v. FEC*, 76 F.3d 400 (D.C.Cir.1996); *LaRouche v. FEC*, 28 F.3d 137 (D.C.Cir. 1994).

The FEC has consistently interpreted § 441e as applicable to federal, state, and local elections since 1976. In that year it promulgated 11 C.F.R. § 110.4 which provides, in relevant part:[21]

(1) A foreign national shall not directly or through any other person make a contribution, or an expenditure, or expressly or impliedly promise to make a contribution, or an expenditure, in connection with a convention, a caucus, or a primary, general, special, or runoff election in connection with any local, State, or Federal public office.

(2) No person shall solicit, accept, or receive a contribution as set out above from a foreign national.

11 C.F.R. § 110.4(a).

It is unfortunate, but true, that neither the FARA, in which the predecessor of § 441e first appeared, nor FECA, to which it was removed in 1976, provides detailed reasons why Congress extended the ban in those sections to state and local elections. However, the legislative history of FARA does state repeatedly that it is designed to

any political office." *Compare* §§ 441a, 441b, and 441e.

**20.** Indeed, the House Conference report accompanying the amendments to FARA, which established § 613, explain that the "new section relating to agents of foreign principals ... would prohibit such agents from making or promising to make in their capacity as agents contributions in connection with any election to any political office or in connection with any primary election, convention, or caucus to select new candidates." H.R.REP. No. 89–1470, at 15, *reprinted in* 1966

U.S.C.C.A.N. 2397, 2410–11. Notably the relevant language of the provision ("an election to any political office or in connection with any primary election, convention, or caucus held to select candidates for any political office") remains unchanged in the present provision.

**21.** *See* Establishment Clause, 41 Fed.Reg. 35,-950 (Aug. 25, 1976) (establishing 11 C.F.R. § 110.4(a) and other regulations following the 1976 amendments to FECA); *see also* 11 C.F.R. § 110.4(a); FEC Advisory Opinion, 1987–25 (Sept. 17.1987), 1987 WL 61721.

"protect the interests of the United States by requiring complete public disclosure by persons acting for or in the interests of foreign principals where their activities are political in nature." S.Rep. No.88–875, at 1 (1964).[22] Hence, we do not regard the absence of any more explicit reasons by Congress (or the FEC) to be fatal to the reasonableness of the FEC's interpretation. The language of the statute and the explicit regulation of the FEC interpreting it provide an additional reason that the defendants should have known that 104.8(e) imposed a true source reporting requirement for soft money donations.[23]

### III. Conclusion

For the reasons previously stated in our decision in *Hsia*, we reverse the district court's orders that dismissed the false statement counts predicated on hard money contributions. We also find that the reporting regulation, section 104.8 (e), requires the reporting of the true sources of conduit contributions with respect to soft money and that § 441e forbids foreign national donations of soft money. Thus, the judgment of the district court, with respect to the soft money counts, is reversed as well.

*So ordered.*

---

**22.** The Report continues: "Such public disclosure as required by the Act will permit the Government and the people of the United States to be informed as to the identities and interests of such persons and so be better able to appraise them and the purposes for which they work." S.Rep. No. 88–875, at 1; *see also* H.R.Rep. No. 89–1470, at 2 (1966). Senator Fulbright also commented on the floor that foreign agents "will have to make public *all* their political contributions." 109 Cong. Rec. 16598 (1965) (emphasis added). Finally, in old § 613, "agent of a foreign principal" was defined as "one who *within the United States solicits* ... or disburses contributions, loans, money or other things of value for or in the interests of such foreign principal" (emphasis added).

**23.** To argue, as defendants do, that the rule of lenity compels us to reject the FEC's otherwise reasonable interpretation of an ambiguous statutory provision is to ignore established principles of law. *See Babbitt*, 515 U.S. at 704 n. 18, 115 S.Ct. 2407 ("We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement. Even if there exist regulations whose interpretations of statutory criminal material provide such inadequate notice of potential liability, the ... regulation [at issue], which has existed for two decades and gives fair warning of its consequences cannot be one of them.").