**EARTH PLEDGE FOUNDATION and Fundacion Cultural Dominica, Plaintiffs,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

No. 95 Civ. 0257(JGK).

United States District Court, S.D. New York.

Dec. 4, 1996.

Theodore W. Kheel, Battle Fowler LLP, New York City, for Plaintiffs.

Mary Jo White, United States Attorney for the Southern District of New York, by Jeffrey Oestericher, Assistant United States Attorney, New York City, for Defendant.

## OPINION AND ORDER

KOELTL, District Judge.

Plaintiffs Earth Pledge Foundation and Fundacion Cultural Dominica filed this action contesting the denial of their Freedom of Information Act ("FOIA") request by the defendant, the Central Intelligence Agency ("CIA"). The parties have now filed cross motions for summary judgment.

### I.

The facts in this case are largely undisputed. On December 21, 1993, the plaintiffs

submitted a FOIA request to the CIA seeking:

> Cables and other forms of correspondence between the CIA station in Ciudad Trujillo, Dominican Republic and CIA headquarters in Washington and between the headquarters and that Station between April 1, 1960 and June 5, 1961 pertaining to contacts with dissident elements, hostile to the regime of Rafael Trujillo.

(Complaint at ¶ 7, Exhibit A). The CIA denied the request, refusing to confirm or deny either the existence of records responsive to the request, or the existence of such a CIA station. (January 18, 1994, letter from John H. Wright, CIA Information and Privacy Coordinator, attached as Exhibit B to the Complaint). After an internal appeal, on November 14, 1995, the CIA reaffirmed its determination. (November 14, 1995, letter from Edmund Cohen, Chairman, Agency Release Panel, attached as Exhibit D to Affidavit of Theodore W. Kheel, dated June 4, 1996 ("Kheel Aff.")). In refusing to confirm or deny the existence of documents responsive to this request, the CIA relied on two FOIA exemptions, 5 U.S.C. § 552(b)(1) and 5 U.S.C. § 552(b)(3).

Section § 552(b)(1) exempts from disclosure matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." The Executive Order issued pursuant to that section requires an "agency to refuse to confirm or deny the existence or non-existence of requested information whenever the fact of its existence is itself classified under this Order." Executive Order 12356 § 3.4(f)(1).

Under section 552(b)(3) a federal agency can withhold matters that are "specifically exempted from disclosure by statute . . . ." The CIA asserts that two separate statutes allow non-disclosure of the information requested by the plaintiffs. First, 50 U.S.C. § 403–3(c)(5), the codification of the Central Intelligence Act of 1949, commands that the Director of the CIA shall "protect intelligence sources and methods from unauthorized discovery." Second, 50 U.S.C. § 403(g) exempts the CIA from any laws which "require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency . . . ."

In defending the denial of the FOIA request, the CIA argues that even to confirm or deny the existence of a CIA station in Ciudad Trujillo or the existence or non-existence of the requested documents would compromise the CIA's ability to gather intelligence. (Declaration of Lee S. Strickland Dated May 15, 1996 ("Strickland Decl.") at ¶ 11). The CIA further argues that official confirmation that the CIA operated an installation and conducted espionage in a foreign country could cause a diplomatic confrontation and lead to the disruption of foreign relations. (Id. at ¶¶ 13, 14, 16, 17, 20). According to the CIA, the official disclosure of such an arrangement could cause the foreign country embarrassment, pressure that country into retaliating against the United States, and lead to the termination of that country's relationship with the CIA. (Id. at ¶¶ 14, 20). The CIA maintains that it has never acknowledged the existence of a CIA station in Ciudad Trujillo nor has it acknowledged whether it has maintained relationships with political opponents of the former regime in the Dominican Republic.

In response, the plaintiffs argue that the existence of a CIA station in Ciudad Trujillo, the capital city of the Dominican Republic, is already a matter of public record. In support of this assertion, the plaintiffs submitted a copy of Senate Report No. 94–465 dated November 20, 1975. (Senate Report No. 94–465 attached as Exhibit H to Kheel Aff.). This report makes reference to diplomatic cables being exchanged between CIA headquarters in Washington, DC and a CIA station in the capital city of the Dominican Republic. Plaintiffs argued that the CIA cannot justify its denial of plaintiffs' FOIA request based on the need for secrecy in regard to information that is already in the public domain.[1]

---

1. The plaintiffs in their Memorandum of Law in Support of their Motion for Summary Judgment

At a hearing held on September 13, 1996, the Court informed the Government that it required more information to evaluate properly the CIA's reasons for refusing to confirm or deny the existence of the records and information sought. The Court stated that given the acknowledgement in a Congressional report of the existence of a CIA station in the capital of the Dominican Republic, the Court required that the Government explain in more detail how confirming or denying the existence of either this station or the documents requested would jeopardize national security and compromise the CIA's ability to gather intelligence.

■ The Court requested that the Government submit additional affidavits demonstrating that the CIA's justifications for nondisclosure satisfied FOIA's statutory exceptions. Because the Court recognized that such affidavits could be sensitive and contain confidential information, the Government was allowed to submit the affidavits in camera. Submission of in camera affidavits by the Government is appropriate in a case raising national security concerns where the Government claims that it cannot confirm or deny the existence of documents. *See Weberman v. National Security Agency,* 668 F.2d 676 (2d Cir.1982) (rejection of the CIA's right to refuse to neither confirm nor deny the existence of information, without examining in camera affidavits, is an abuse of discretion); *Daily Orange Corp. v. Central Intelligence Agency,* 532 F.Supp. 122, 127–28 (N.D.N.Y.1982). On October 11, 1996, the CIA submitted affidavits to this Court in camera.

## II.

■ An agency's decision not to release information under FOIA is reviewed de novo by the district court. See 5 U.S.C. § 552(a)(4)(B); *Miller v. Casey,* 730 F.2d 773, 776 (D.C.Cir.1984). "Summary judgement is warranted on the basis of agency affidavits when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Miller,* 730 F.2d at 776 (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir. 1981)); *see also Daily Orange,* 532 F.Supp. at 126.

■ In conducting a de novo review for the purposes of a summary judgment motion, the district court must " 'accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.'" *Miller,* 730 F.2d at 776 (quoting *Military Audit Project v. Casey,* 656 F.2d at 738); *see also Doherty v. United States Dept. of Justice,* 775 F.2d 49, 52 (2d Cir.1985); *Halperin v. Central Intelligence Agency,* 629 F.2d 144, 148 (D.C.Cir.1980) ("if the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency"). Courts must be especially deferential to agency judgment when, as is the case here, the Government is concerned with protecting intelligence sources and intelligence gathering methods. As the Supreme Court stated, " '[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to effective operation of our foreign intelligence service.'" *CIA v. Sims,* 471 U.S. 159, 174, 105 S.Ct. 1881, 1890, 85 L.Ed.2d 173 (1985) (quoting *Snepp v. United States,* 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 766 n. 3, 62 L.Ed.2d 704 (1980) (per curiam)); *see also Miller,* 730 F.2d at 777 (CIA permitted to neither confirm or deny information that could lead to retaliation and hamper future intelligence

also argued that the Senate Report served as a waiver of the CIA's right not to disclose the requested information. The CIA argued in response that there could be no formal waiver because it never authorized the Congressional disclosure and only the Executive Branch could waive the exemptions from disclosure. *See Military Audit Project v. Casey,* 656 F.2d 724, 742–45 (D.C.Cir.1981). However, during oral argument plaintiffs' counsel stated that the plaintiffs were not claiming that any waiver had occurred. Rather, the plaintiffs argue that the existence of the Senate Report demonstrates that there is no longer a need for secrecy.

gathering); *Daily Orange,* 532 F.Supp. at 126 (CIA is permitted to refuse to confirm or deny sources on a university campus when it would interfere with intelligence gathering and expose sources to possible reprisal). "Even a small chance that some court will order disclosure of a source's identify could well impair intelligence gathering." *Sims,* 471 U.S. at 175, 105 S.Ct. at 1890.

 The CIA correctly determined that the information sought was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(1). Executive Order 12356 authorizes the CIA to refuse to confirm or deny the existence or non-existence of requested information whenever the fact of its existence is itself classified. Classification is appropriate for intelligence activities, intelligence sources and methods, foreign relations, and confidential sources. Executive Order 12356 § 1.3(a). Any information in these categories must be classified when unauthorized disclosure would be expected to cause damage to national security. Id. at § 1.3(b). Unauthorized disclosure of foreign government information, the identity of a confidential source, or intelligence sources or methods is presumed to cause damage to the national security. Id. at § 1.3(c). Thus, the CIA cannot confirm or deny whether it maintains records responsive to the plaintiffs' request because the confirmation or denial of responsive records would reveal a classified fact—whether the CIA had contacts with individuals hostile to the regime of Rafael Trujillo. (Strickland Decl. at ¶¶ 7–8). Moreover, revelation of that fact, and confirming or denying the existence of documents, would disclose the CIA's intelligence methods and sources and could reasonably be expected to damage United States foreign relations. (Strickland Decl. at ¶¶ 6–25).

 Similarly, the CIA is correct that the information sought is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3). A court evaluating an agency's refusal to comply with a FOIA request under section 552(b)(3) must ask two questions: First, is the statute in question a statute of exemption as contemplated by section 552(b)(3), and second, does the withheld information satisfy the criteria of the exemption statute. *Fitz-*

*gibbon v. Central Intelligence Agency,* 911 F.2d 755, 761 (D.C.Cir.1990); *see also Sims,* 471 U.S. at 167, 105 S.Ct. at 1886. Both of the statutes upon which the CIA relies, 50 U.S.C. § 403–3(c)(5) and 50 U.S.C. § 403(g), are clearly exemption statutes for the purpose of section 552(b)(3). *See Sims,* 471 U.S. at 161–63, 105 S.Ct. at 1884–85 (statutory command to "protect intelligence sources and methods from unauthorized discovery" is an exemption statute); *Fitzgibbon,* 911 F.2d at 761 (same); *Halperin v. CIA,* 629 F.2d at 147 (holding that 50 U.S.C § 403(g) is an exemption statute under section § 552(b)(3)); *Ferry v. CIA,* 458 F.Supp. 664, 666 (S.D.N.Y. 1978) (same). Therefore, the CIA must only satisfy the second requirement, that the material withheld satisfy the criteria of the exemption statutes. *Fitzgibbon,* 911 F.2d at 761; *see also Sims,* 471 U.S. at 167, 105 S.Ct. at 1886.

The CIA has stated with sufficient detail how the disclosure of the requested information could compromise intelligence sources, has demonstrated that intelligence gathering would be impaired, and has proved that whether these documents and the CIA station exist is itself classified information. The CIA states that confirming or denying the existence of contacts with dissidents would break the CIA's pledge of confidentiality to the intelligence sources it recruits. (Strickland Decl. at ¶ 11.) Whatever disclosures may have been made in a Congressional Report, the CIA has an ongoing interest in assuring its sources of its continued adherence to its strict policy of not revealing sources. Given the Supreme Court's holding in *Sims,* the danger of revealing sources, detailed in the CIA's public papers, would alone be sufficient to justify the CIA's refusal to either confirm or deny information that relates to these intelligence sources. *See Fitzgibbon,* 911 F.2d at 764–66; *Daily Orange,* 532 F.Supp. at 125. The CIA has also submitted additional information, in camera, that convinces this Court that disclosure of the information requested by the plaintiffs would jeopardize intelligence sources. Moreover, as the court in *Daily Orange* stressed, the discussion of the justification for not confirming or denying the exis-

tence of documents is not to be construed as a back door means of implying that such documents exist. Rather, there is an important interest to be served by a policy that does not confirm or deny the existence of documents which would establish the existence of intelligence sources and methods. To do otherwise would mean that the CIA could only refuse to confirm or deny the existence of such documents when such documents actually existed, which would itself be a way of identifying those document requests which had identified intelligence operations.

The CIA has also demonstrated that being forced to disclose the information the plaintiffs request would compromise its intelligence gathering methods. The plaintiffs' request seeks official confirmation of an unconfirmed CIA field station. The CIA argues that such a confirmation could cause a confrontation with the Dominican Republic or the disruption of foreign relations. (Strickland Decl. at ¶¶ 13–14, 16–17, 20.) The CIA further argues that public disclosure would destroy the future usefulness of this station, should it in fact exist. (Id. at ¶¶ 13, 15.). These reasons demonstrate the dangers of forcing the CIA to make the requested disclosures in this case. *See Fitzgibbon,* 911 F.2d. at 765–67; *Daily Orange,* 532 F.Supp. at 125.

Moreover, the CIA has demonstrated that even denying the existence of this station could jeopardize national security. If the CIA is forced to deny that bases exist in some locations, the location of existing bases could be pinpointed by a process of elimination. *See Daily Orange,* 532 F.Supp. at 126. Thus, the CIA's concerns about compromising intelligence methods, to the extent detailed in the CIA's public papers, are sufficient to prevent disclosure of the information requested by the plaintiffs. *See Fitzgibbon,* 911 F.2d. at 765–67; *Daily Orange,* 532 F.Supp. at 125. Moreover, the CIA has submitted, in camera, additional information about how the disclosures requested by the plaintiffs would interfere with its intelligence gathering.

▮ That the CIA claims future rather than present harm does not make the CIA's demonstration of harm too speculative.

"Agency evaluations of threatened harm in national security FOIA cases are always speculative to the extent that they describe a potential harm rather than actual past harm." *Daily Orange,* 532 F.Supp. at 127 (citing *Halperin,* 629 F.2d at 149). Moreover, while a showing of bad faith by the agency could call into question the existence of the harm the agency asserts, there has been no allegation that the CIA has acted in bad faith in this case. *See Miller,* 730 F.2d at 776 (quoting *Military Audit Project,* 656 F.2d at 738); *see also Daily Orange,* 532 F.Supp. at 126.

▮ The CIA has also demonstrated that public disclosure in the Senate Report of some of the information requested by the plaintiffs does not undermine its justifications for refusing to confirm or deny the existence of this information. The CIA argues that countries are willing to tolerate the presence of CIA installations in their country only if the United States does not officially acknowledge that such stations exist. (Strickland Decl. at ¶ 14). Thus, confirmation of the existence of such an installation, even by another branch of the federal government, is different from the CIA itself acknowledging the existence of the base. *See Fitzgibbon,* 911 F.2d at 765–67; *Afshar v. Department of State,* 702 F.2d 1125, 1130–31 (D.C.Cir.1983); *Phillippi v. CIA,* 655 F.2d 1325, 1332–33 (D.C.Cir.1981). Moreover, as explained above, the CIA has a continuing interest in assuring its sources that it will not be the cause of any disclosure of their existence or their identities.

### III.

For all of the reasons stated above, the information requested by the plaintiffs is clearly exempt from disclosure under both 5 U.S.C. § 552(b)(1) and 5 U.S.C. § 552(b)(3). Thus, the CIA's motion for summary judgment is granted. The plaintiffs' cross-motion for summary judgment is denied. The Clerk is directed to enter judgment dismissing the Complaint and closing the case.

**SO ORDERED.**