### UNITED STATES of America, Plaintiff,

v.

### William PICKARD and Clyde Apperson, Defendants.

### Case No. 00–40104–01/02–RDR.

United States District Court, D. Kansas.

June 20, 2002.

---

Gregory G. Hough, Office of the United States Attorney, Topeka, KS, for Plaintiff.

William K. Rork, Mark L. Bennett, Jr., Bennett, Hendrix & Moylan, L.L.P., Rork Law Office, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

The government has filed a motion in limine regarding the testimony of Gordon Todd Skinner. The government seeks an order barring the defendants, their counsel and any defense witnesses from offering any evidence, soliciting any testimony, or making any reference concerning the following accusations and allegations regarding Skinner:[1]

---

1. In response to the government's motion, defendant Pickard noted a number of other matters that he would seek to introduce during the cross-examination of Skinner. He asked the court to consider the "admission" of the following incidents and events:

(1) control and sale of high-powered assault rifles while on pretrial release, and after conspiring with Graham Kendall and Ed Peden to mislead the magistrate and this court by suggesting that weapons were "powder guns" and exempt from the law; (2) use of aliases and fraudulent misrepresentation in acquiring and absconding with 70 foot motor vessel, resulting in seizure by Cayman Island authorities; (3). damages awarded against Skinner as a result of the aforementioned actions, but

(1) conviction for possession of an Interpol Identification Badge;

(2) alleged writing of counterfeit checks to Pickard;

(3) alleged overdose on controlled substances while in San Francisco, California in 1998;

(4) the filing of bankruptcy in 1992 in Oklahoma and allegations of fraud related to the bankruptcy;

(5) grant of immunity in this matter and details relating to it;

(6) alleged elusion of prosecution for the homicide of Paul Hubelak in Pottawatomie County, Kansas in April 1999;

(7) alleged theft of stereo speakers and equipment in Pottawatomie County, Kansas;

(8) civil RICO, fraud and securities violations resulting from the alleged fact that Skinner made fraudulent representations to members of Financial Operations Group which allegedly resulted in debts of over $1.3 million;

(9) alleged "bizarre public behavior" while under the influence of controlled substances;

(10) alleged deception of law enforcement officials concerning true amount of Ergotamine Tartrate that he had in his possession and control;

(11) alleged violation of State of New Jersey wiretapping statute in case of *State v. Worthy*, 141 N.J. 368, 661 A.2d 1244 (1995);

(12) alleged deception of true ownership of Atlas E facility in Wamego, Kansas;

(13) alleged maintenance of LSD laboratory while on pretrial release in case noted in paragraph 1;

(14) alleged distribution of Fentanyl to an unnamed individual at the Atlas E facility, which individual allegedly overdosed and subsequently was treated by Skinner;

(15) polygraph examination where Skinner was found to be deceptive;

(16) alleged drug use and other distributions at various times;

(17) alleged incident involving Skinner's children and narcotics;

(18) alleged statement by Skinner to Pottawatomie County Sheriff regarding "large cache of arms and ammo."

The government contends that the aforementioned matters are not admissible under Fed.R.Evid. 609 or 608(b). The government spends most of their discussion on the issue of whether Rule 609 bars this material. As noted by the defendants, the only conviction noted in all of this material is that found in paragraph 1—the convic-

---

are fraudulently evaded by Skinner via his spurious 'trust' and the avoidance of the U.S. Attorney's Office in bringing Skinner's assets to the attention of creditors recognized by the U.S. Bankruptcy Court in Tulsa, Oklahoma and the Eastern District of Louisiana;
(4) laundering of proceeds via Las Vegas casinos and use of these funds to substantially improve the value of the missile base, an asset he is apparently being allowed to keep due to cooperation;
(5) providing counterfeit checks to other individuals for which he is now being sued;
(6) (a) description of himself to the security staff at a casino as a representative of a billionaire, (2) selfdescription to neighbors in Wamego as the largest landowner in Arizona, (c) attempt to obtain a driver's license in Wamego by stating that he was an FBI agent, (d) statements that he had large overseas accounts at Barclay's Bank and that he had a million dollar account with Kaiser Steel;
(7) association with LSD laboratories worldwide including two chemists.
The court does not intend to address any of these matters at this time. Neither side has produced any arguments concerning these incidents. The court can consider this evidence at the time of trial.

tion for possession of an Interpol Identification Badge.

This motion presents problems for the court because we do not have much information on some of these matters. Any attempt to preclude the introduction of evidence when we do not know all of the details is difficult, at best.

## RULE 609

Under Rule 609, the credibility of a witness can be impeached by (1) admission of a crime that is a felony if the probative value of admitting this evidence outweighs its prejudicial effect; and (2) evidence of a crime where it involves dishonesty or false statement.

Skinner has been convicted of possession of an Interpol Identification Badge in violation of 18 U.S.C. § 1028(a)(6). This statute asserts that "whomever ... knowingly possesses an identification document that is or appears to be an identification document of the United States which is stolen or produced without lawful authority knowing that such document was stolen or produced without such authority" shall be guilty of an offense against the United States. The violation of this statute is a misdemeanor.

■ Since the crime of conviction is a misdemeanor, then it can only be admitted under Rule 609(a)(2). Thus, it must be a crime involving dishonesty or false statement. This type of crime must involve "some element of deceit, untruthfulness, or falsification which would tend to show that an accused would be likely to testify untruthfully." *United States v. Mejia–Alarcon*, 995 F.2d 982, 988–89 (10th Cir.1993).

■ Contrary to the suggestion of the government, the court finds there is little argument that this crime falls within Rule 609(a)(2). Skinner's conviction for possession of a fraudulent document clearly reflects upon his ability to testify truthfully.

Accordingly, the court finds that this conviction is fair game under Rule 609(a)(2).

To the extent that the government contends that the remainder of the matters are not admissible under Rule 609, we must agree. The court does not find any other reference to a conviction in these materials. Nevertheless, as pointed out by the defendants, we must consider if any of the other matters are admissible under Rule 608(b).

## RULE 608(B)

■ Rule 608 provides that, with limitations, the credibility of a witness may be attacked or supported by evidence of the witness's character for truthfulness or untruthfulness. Rule 608(b) provides that, under certain circumstances, specific instances of the witness's conduct relating to credibility may be inquired into on cross-examination. Specifically, it provides as follows:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters that relate only to credibility.

■ Several things must be considered in applying Rule 608(b). First, Rule 608(b) seeks to minimize the dangers attendant on the use of character evidence for impeachment by limiting it to evidence that is relevant to the witness' character for truthfulness. Fed.R.Evid. 608(b). Second, Rule 608(b) is subject to the overriding protection of Fed.R. Evid. 403, which requires the exclusion of evidence whose probative value is substantially outweighed by the danger of prejudice, confusion or waste of time. See *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 839 (10th Cir.1988), cert. denied, 490 U.S. 1021, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989) (probative value of evidence showing that one of defendant's agents embezzled $40,000 in connection with plaintiff's lease was greatly outweighed by risk of unfair prejudice); *United States v. Mangiameli*, 668 F.2d 1172, 1175–76 (10th Cir.), cert. denied, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982) (any probative value of the evidence substantially outweighed by danger of confusing issues with introduction of collateral matters). Third, Rule 611 bars harassment and undue embarrassment of witnesses. Fed. R.Evid. 611. Fourth, under both Rule 608(b) and the Federal Rules of Evidence in general, the trial court has considerable discretion to control the admission of character evidence. See *United States v. Ortiz*, 5 F.3d 288, 290–91 (7th Cir.1993).

■ One other important consideration for the application of Rule 608(b) is the policy against the use of extrinsic evidence. Specific instances of a witness' conduct, other than a conviction of a crime, that are offered to attack or support a witness' credibility may not be proved by extrinsic evidence. Fed.R.Evid. 608(b). Evidence is "extrinsic" if offered through documents or other witnesses, rather than through cross-examination of the witness himself or

herself. This means that only cross-examination may be employed to expose dishonest acts. See *United States v. Martinez*, 76 F.3d 1145, 1150 (10th Cir.1996) (if witness denies making particular statement on collateral matter, examiner may not introduce extrinsic evidence to prove that witness did in fact make statement).

■ As noted earlier, the court has some difficulty in excluding certain evidence without a full understanding of the details involved. With this background, the court finds that it cannot grant the government's motion in limine on the following matters: (1) bankruptcy fraud, *United States v. Cusmano*, 729 F.2d 380, 383 (6th Cir.1984); (2) fraudulent activity, *United States v. Gay*, 967 F.2d 322, 327–28 (9th Cir.1992), *cert. denied*, 506 U.S. 929, 113 S.Ct. 359, 121 L.Ed.2d 272 (1992); (3) misrepresentation, United *States v. Crippen*, 570 F.2d 535, 538–39 (5th Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); and (4) theft, *United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir.1996). This would allow the defendants to examine Skinner on the aforementioned matters designated as numbers 1, 2, 4, 7 and 8. Accordingly, the court shall deny the government's motion on these matters.

■ The court shall now turn to the other matters addressed in the government's motion. The court notes that the government has sought to exclude evidence of Skinner's prior drug use (Nos. 3, 9, 16 and 17). Drug use is not admissible under Rule 608(b) because it is not probative of truthfulness. *United States v. McDonald*, 905 F.2d 871, 875 (5th Cir.), cert. denied, 498 U.S. 1002, 111 S.Ct. 566, 112 L.Ed.2d 572 (1990); *United States v. Rubin*, 733 F.2d 837, 841–42 (11th Cir. 1984). However, a witness' prior drug use may be admitted to show the effect of the drug use on the witness' memory or recol-

lection of events. *United States v. Smith,* 156 F.3d 1046, 1054–55 (10th Cir.1998). To the extent that the government seeks to exclude Skinner's prior drug use under Rule 608(b), the court shall grant this motion. The court, however, is aware that this evidence may be admitted for other reasons.

■ The government has sought to exclude evidence concerning the death of Paul Kenneth Hulebak. The facts concerning this event are not entirely clear, but the court shall state what is presently known about this death. The court shall then attempt to determine whether this evidence should be excluded.

Hulebak died on or about April 29, 2001, allegedly at the missile base where Skinner resided. Pottawatomie County law enforcement conducted an investigation, but no charges were brought at that time. On October 26, 2000, Skinner and the federal government entered into an agreement. Skinner was granted immunity to allow him to provide information that subsequently formed the basis of the instant case. As part of that agreement, the events surrounding Hulebak's death were discussed with Skinner. With Skinner's information, law enforcement officials conducted a further investigation of Hulebak's death. Subsequently, the Pottawatomie County Attorney brought charges of involuntary manslaughter against Skinner. On August 21, 2001, Steven Roth, magistrate judge for the District Court of Pottawatomie County, suppressed certain evidence obtained in the Hulebak death. He ruled that this evidence had been obtained as a result of the immunized testimony provided by Skinner. With this decision, the charge against Skinner was later dismissed.

Based upon the information presently before the court, we do not find that the charge of manslaughter against Skinner

and the events surrounding that charge are admissible under Rule 608(b). The charge and the events that led to the charge are not probative of Skinner's veracity. See *United States v. Adewusi,* 116 F.3d 1486, 1997 WL 349035 (9th Cir.1997) (table case) ("Rosenthal murder evidence [involvement with murder of his stepfather] was not admissible to show the character and conduct of Rosenthal because it did not involve a conviction, and it was not probative of Rosenthal's truthfulness or untruthfulness."). Accordingly, the court shall grant the government's motion in limine on this issue, at least concerning its admissibility under Rule 608(b).

■ The government has also sought to exclude evidence related to a New Jersey criminal case. In that case, Skinner acted as an informant in a New Jersey drug case in 1991. He had been indicted in New Jersey on charges of distribution of drugs. In an effort to gain some favor with authorities, Skinner came forward with some information about John Worthy and others. He was told to arrange a drug deal with Worthy and to tape record the conversations. During the tape recorded conversations, Skinner was in Oklahoma and Worthy was in New Jersey. The New Jersey law enforcement officer in charge of the investigation initially failed to get appropriate authorization for the recorded conversations under the New Jersey Wiretap and Electronic Surveillance Act. He subsequently did obtain authorization for some of the later conversations. After criminal charges were filed against Worthy and others, they moved to suppress the taped telephone conversations. They contended that the New Jersey Act prohibited the use of these conversations. The Supreme Court of New Jersey agreed that the initial conversations were recorded in violation of the New Jersey Act. 661 A.2d at 1253. The

Court also ruled that the later conversations, obtained with appropriate authorization under the Act, must also be suppressed because they were tainted by the earlier illegally intercepted conversations. *Id.* at 1254. Finally, the Court held that the inevitable discovery doctrine did not preclude suppression of the taped conversations. *Id.* at 1256. In reaching this conclusion, the Court made the following comment:

> The [trial] court found that the credibility and character of Skinner was so questionable that the tapes were "essential and critical in this investigation and in carrying it forward."

*Id.* at 1255.

After a careful review of the circumstances of this case, the court has determined that any mention or evidence concerning this case should be excluded. The defendant apparently seeks to admit the aforementioned statement in which the trial court in that case found Skinner's credibility was "so questionable" that the tapes were critical to that case. It is apparent from reading the Supreme Court's decision that the trial court believed that the tapes were critical because Skinner, the state's key witness, was an "informant, who had a criminal background, who was under serious criminal charges himself and was acting in a manner to gain a benefit for himself in his own [case]." 661 A.2d at 1255. The court is not persuaded that the New Jersey trial court's evaluation of Skinner has any importance here. The jury in this case is capable of making its own determination regarding Skinner's credibility. To the extent that any discussion of the New Jersey case has any probative value, we believe that it is outweighed by its prejudicial impact and its potential to confuse the jury and unduly waste the court's time. Accordingly, the court shall exclude any mention of the New Jersey case.

 The government seeks to exclude a polygraph examination where Skinner was found not credible. The government argues that the introduction of this evidence will confuse the jury and be only marginally relevant. Relying upon *Palmer v. City of Monticello,* 31 F.3d 1499 (10th Cir.1994), the defendants suggest that the polygraph examination is admissible as relevant evidence, regardless of the results. In Palmer, the court suggested that evidence that a polygraph examination was conducted might be admissible, regardless of the results, as an operative fact. 31 F.3d at 1506. As pointed out by the defendants, this might occur in a case where a party wanted to prove that he could not have committed a crime because he was taking a polygraph examination at the time of the alleged crime. The defendants contend that the fact that Skinner was subjected to polygraph examinations here should be admitted to show that the government had concerns about Skinner's credibility.

The court finds that the defendants' argument is a considerable reach and certainly beyond the reach of the rationale of Palmer. The court assumes that all polygraph examinations are given because there is some question about the credibility of the subject of the examination. The court's acceptance of the defendants' argument would allow the introduction of the fact of a polygraph examination in virtually all cases. We do not think that the Tenth Circuit intended such a result in Palmer, and we shall not extend Palmer to such an absurd result.

The next question is whether the court should admit the polygraph examination in light of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Relying

upon *United States v. Walters*, 28 Fed. Appx. 902 (10th Cir.2001), the defendants suggest that the court must consider the introduction of this evidence under Daubert.

In Walters, the Tenth Circuit affirmed Judge Crow's decision to allow testimony into evidence concerning the defendant's polygraph examination. Judge Crow, after conducting a hearing outside the presence of the jury, determined that the evidence was admissible under Daubert. He further determined that the polygraph evidence was not more prejudicial than probative under Rule 403. In reaching this conclusion, he noted the unusual fact that the defendant had stipulated to admission of the polygraph results before he submitted to the examination. See *United States v. Walters*, 89 F.Supp.2d 1206, 1209 (D.Kan.2000) (citing *United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir.1998) ("[A] district court can admit polygraph evidence ... when the parties stipulate in advance as to the circumstances of the test and as to the scope of its admissibility.")).

After careful review of *Walters and United States v. Call*, 129 F.3d 1402 (10th Cir.1997), this court does not believe that evidence concerning the polygraph examinations administered to Skinner should be admitted even if a subsequent Daubert hearing would disclose the reliability of polygraph examinations. The court believes that such evidence should be excluded under Rule 403 because the jury may be confused by such evidence. The court believes that the jury may overvalue scientific results as an indication of truthfulness. *Call*, 129 F.3d at 1406. The case differs substantially from Walters because neither Skinner nor the government agreed to the introduction of the results of the examinations. Accordingly, the court finds that the government's motion in li-

mine concerning the polygraph examinations of Skinner should be granted.

■ There are some other statements purportedly made by Skinner noted by the government in its list of matters that it seeks to exclude. These include statements involving (1) the true amount of ergotamine tartrate, (2) the ownership of the Atlas E facility, and (3) the ownership of a large cache of firearms and ammunition. The government has suggested that these statements should be excluded under Rule 608(b). We agree. Based upon the information provided to the court, there is nothing in these statements that is probative of the witness' character for truthfulness or untruthfulness. A cross-examiner may not inquire concerning conduct that does not involve the veracity or honesty of the witness. This, of course, does not mean that any reference to these statements is precluded. The statements may be admissible in other ways, but we do not find that they are admissible under Rule 608(b). Counsel for both sides should understand the difference between impeachment by contradiction and impeachment by character. Nevertheless, we also note that an isolated untruth may have little, if any, conceivable relevance to a witness' credibility at trial. See *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir.1980) ("[T]he district court is not bound to allow examination into every incident, no matter how remote in time and circumstance, that may possibly bear upon the witness' veracity."). In any event, the court does not find that these statements can be allowed under Rule 608(b) as impeachment by character.

**IT IS THEREFORE ORDERED** that the government's motion in limine regarding Gordon Todd Skinner (Doc. # 128) be hereby granted in part and denied in part

as set forth in the foregoing memorandum and order.

**IT IS SO ORDERED.**