**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM LEONARD PICKARD,
  *Plaintiff-Appellant,*

v.

DEPARTMENT OF JUSTICE,
  *Defendant-Appellee.*

No. 08-15504

D.C. No.
06-CV-00185-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
January 13, 2011—San Francisco, California

Filed July 27, 2011

Before: J. Clifford Wallace, Barry G. Silverman, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Silverman;
Concurrence by Judge Wallace

**COUNSEL**

Kim Zeldin (argued), Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP, Sacramento, California, for the appellant.

Neill Tseng (argued), Assistant United States Attorney, Melinda Haag United States Attorney, Joann M. Swanson, Chief, Civil Division, United States Attorney's Office, San Francisco, California, for the appellee.

---

**OPINION**

SILVERMAN, Circuit Judge:

William Leonard Pickard, an inmate at the Federal Correctional Institution in Victorville, California, seeks enforcement of his Freedom of Information Act request to the Drug Enforcement Administration for records pertaining to confidential informant Gordon Todd Skinner. In response to Pickard's FOIA request, the DEA submitted a *Glomar* response refusing to confirm or deny the existence of any responsive records pertaining to Skinner, citing exemptions 6 and 7(C), (D) and (F) of the Act. Pickard argues that the government is prohibited from submitting a *Glomar* response because Skinner has already been "officially confirmed" as a confidential informant in conformity with 5 U.S.C. § 552(c)(2), and that the government now should move on to the next step and produce a *Vaughn* index.

We hold today that because the government officially confirmed Skinner's status as an informant in open court in the course of official proceedings, the government cannot continue to "neither admit nor deny" Skinner's informant status in response to a FOIA request. This is not to say that all documents related to Skinner are subject to disclosure. We simply

hold that since Skinner has already been officially identified as an informant by government counsel and agents, the cat is out of the bag and the government must proceed to the next step — provide an index of the documents it has and make whatever additional objections to disclosure it deems appropriate.

## PROCEDURAL BACKGROUND

On January 25, 2005, Pickard submitted a request to the DEA, an agency that is part of the United States Department of Justice, for "information and documents pertaining to DEA informant Skinner." Pickard specifically sought any information on Skinner's criminal history (including records of arrests, convictions, warrants, or other pending cases), records of all case names, numbers, and judicial districts where he testified under oath, records of all monies paid in his capacity as a federal government informant, all records of instances where the DEA intervened on his behalf to assist him in avoiding criminal prosecution, all records of administrative sanctions imposed for dishonesty, false claims, or other deceit, all records of any benefits of any nature conferred, all records of deactivation as a confidential informant and the reasons for deactivation, and all records concerning Skinner's participation in criminal investigations.

On February 11, 2005, the DEA denied Pickard's request. Citing FOIA Exemptions 6 and 7(C), and without confirming or denying the existence of any records relating to Skinner, the DEA advised Pickard that he would have to provide either proof of death or a privacy waiver from Skinner before any information would be released. Pickard appealed to the Office of Information and Privacy. The OIP upheld the DEA's response, and Pickard filed a complaint in the district court to enforce his FOIA request.

After the district court reviewed the complaint and ordered it served, the DEA moved for summary judgment arguing that

the Privacy Act, 5 U.S.C. § 552a, subsections (j)(2) and (k)(2), and FOIA exemptions 6 and 7(C), (D) and (F), applied to Pickard's request. The district court denied the motion without prejudice, noting that the DEA had not adequately justified its response to the request. The DEA again moved for summary judgment, this time fully briefing why a *Glomar* response,[1] the practice of refusing to confirm or deny the existence of records pertaining to a named individual, was appropriate to Pickard's request and attaching a declaration in support of its response.

Pickard filed an opposition in which he cited to another district court decision on a motion in limine by the government. In that motion, the government sought to prevent Pickard from submitting certain evidence at trial to impeach Skinner. In its ruling, the district court stated that "[t]he government provided the court with Skinner's DEA informant file and suggested that the court conduct an in camera review to determine if there were any other occasions where Skinner had served as an informant." *United States v. Pickard*, 278 F. Supp. 2d 1217, 1244 (D. Kan. 2003). Pickard's opposition also included a declaration of his own, attesting that at his criminal trial DEA agent Karl Nichols testified that Skinner acted as an informant in Pickard's case. Pickard's declaration also notes that DEA agent Ralph Sorrell also testified at the trial about Skinner's identity and activities as an informant. Pickard also cites to decisions from the Tenth Circuit and from the district court in his criminal case from which it can be deduced that the government called Skinner as a witness at Pickard's trial and elicited testimony from Skinner and DEA agents in which they each specifically acknowledged that Skinner had acted as a confidential informant. *See, e.g.*, *United States v. Aperson*, 441 F.3d 1162, 1200 (10th Cir.

---

[1]"The term arose in a case in which the CIA refused to confirm or deny CIA connection to a ship named the *Hughes Glomar Explorer*." *Minier v. CIA*, 88 F.3d 796, 800 n.4 (9th Cir. 1996) (citing *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976)).

2006) (referring to testimony provided by Skinner, "the government's primary confidential informant"); *United States v. Pickard*, 278 F. Supp. 2d 1217, 1244 (D. Kan. 2003); *United States v. Pickard*, 211 F. Supp. 2d 1287, 1293-96 (D. Kan. 2002) (addressing government's motion in limine regarding evidence offered to impeach Skinner). The government contests the admissibility of certain evidence offered by Pickard, but does not otherwise dispute that Department of Justice attorneys at Pickard's criminal trial elicited testimony in open court from Skinner and DEA agents that identified Skinner as a confidential informant.

The district court granted summary judgment in favor of the government, holding that Skinner's identity as a confidential informant had not been "officially confirmed" within the meaning of 5 U.S.C. § 552(c)(2), and that a *Glomar* response was appropriate under exemptions 7(C) and 7(D).

## STANDARD OF REVIEW

Where the parties do not dispute the district court had an adequate factual basis for its decision and the decision turns on the district court's interpretation of the law, we review the district court's decision de novo. *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996).

## DISCUSSION

[1] The Freedom of Information Act "calls for broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166 (1985). "However, Congress has recognized that public disclosure is not always in the public interest, and has therefore provided the nine exemptions listed in 5 U.S.C. § 552(b)." *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 618 (D.C. Cir. 2011) (internal citation and quotation marks omitted). "Given the FOIA's broad disclosure policy, the United States Supreme Court has 'consistently stated that FOIA exemptions are to be narrowly construed.' " *Wolf v. CIA*, 473

F.3d 370, 374 (D.C. Cir. 2007) (quoting *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)). The DEA may, however, provide a *Glomar* response, "refus[ing] to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." *Wolf*, 473 F.3d at 374 (internal quotation marks omitted).

**[2]** Pickard argues that the DEA's *Glomar* response is improper is this case because the Department of Justice has "officially confirmed" Skinner's status as a confidential informant within the meaning of 5 U.S.C. § 552(c)(2) by calling him as a witness in Pickard's criminal trial and eliciting testimony from Skinner and from DEA agents that identifies Skinner as an confidential informant. Subsection (c)(2) states:

> Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

5 U.S.C. § 552(c)(2). "Where an informant's status has been officially confirmed, a *Glomar* response is unavailable, and the agency must acknowledge the existence of any responsive records it holds." *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007).

The district court held that the DEA's *Glomar* response was valid because Skinner's identity as a confidential informant had not been "officially confirmed" under subsection (c)(2). To determine whether Skinner's identity had been "officially confirmed," the district court applied the standard for the "official acknowledgment" of information. *See Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983). A

fact is deemed "officially acknowledged" only if it meets three criteria:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed; we noted, for example, that official disclosure did not waive the protection to be accorded information that pertained to a later time period. Third, we held that the information requested must already have been made public through an official and documented disclosure.

*Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). Courts have not made any meaningful distinction between "official confirmation" and "official acknowledgment" in the FOIA context. *See, e.g.*, *Wolf*, 473 F.3d at 376-77; *Phillipi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981); *Earth Pledge Found. v. CIA*, 988 F. Supp. 623, 628 (S.D.N.Y. 1996). Moreover, when information has been either "officially acknowledged" or "officially confirmed," an agency is not precluded from withholding information pursuant to an otherwise valid exemption claim; however, a *Glomar* response is no longer appropriate, and the agency must confirm or deny the existence of the requested information. *See Wolf*, 473 F.3d at 379 (holding that an "official acknowledgment waiver relates only to the existence or nonexistence of the records," and remanding "to the district court where the CIA must either disclose any officially acknowledged records or establish both that their contents are exempt from disclosure and that such exemption has not also been waived"); *Benavides v. DEA,* 968 F.2d 1243, 1248 (D.C. Cir. 1992) ("The legislative history suggests, in fact, that Congress intended to permit the DEA to withhold documents under 7(C) and 7(D), even if the agency must, under subsection (c)(2) acknowledge their existence.") (citing 132 Cong. Rec. S14295, at H9467 (daily ed. Oct. 8, 1986) (statement of Reps. English and Kindness)).

The district court held that "the DEA has set forth evidence showing that there is no official acknowledgment of Skinner as an informant." Citing the declaration proffered by the DEA, the district court noted that "[a] search of the web, as well as of the DEA headquarters and San Francisco division offices was conducted and found no official public pronouncement regarding the status of Skinner as a confidential source." The district court further held that Pickard "has not satisfied his burden of producing specific information in the public domain showing that the DEA has officially acknowledge Skinner as an informant." It is unclear whether or how the district court addressed evidence that the government had deliberately elicited testimony in Pickard's criminal trial regarding Skinner's status as an informant; however, given this evidence, we find the district court's application of the third criterion of the *Afshar* standard — whether Skinner's identity has already "been made public through an official and documented disclosure" — too narrow in the context of subsection (c)(2).

[3] "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "When a natural reading of the statute[ ] leads to a rational, common-sense result, an alteration of meaning is not only unnecessary, but also extrajudicial." *Ariz. St. Bd. for Charter Schools v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006). An "official confirmation" does not derive from merely any agency employee, but must be authorized by "a person who is invested with a portion of the sovereignty of the [federal government], and who is authorized to exercise governmental functions either of the executive, legislative, or judicial branch of the government." *See Chapman v. Gerard*, 341 F. Supp. 1170, 1173-74 (D.V.I. 1970), *aff'd*, 456 F.2d 577, 578 (3d Cir. 1972). On the other hand, nothing in the statute or legislative history suggests that in the context of the interests protected by the (c)(2) exclusion, "official confirmation"

requires that the government issue a press release publishing the identity of a confidential informant or that the director of a federal law enforcement agency personally identify the informant. Given these definitions, the plain language of the term "official confirmation" in the context of 5 U.S.C. § 552(c)(2) leads to such a "rational common-sense result" when read to mean an intentional, public disclosure made by or at the request of a government officer acting in an authorized capacity by the agency in control of the information at issue.

**[4]** Here, the undisputed evidence demonstrates just such a disclosure. The case against Pickard was investigated by the DEA and brought to the United States Attorney, who prosecuted the case based on evidence and testimony gathered by DEA agents. At Pickard's criminal trial, the government, as part of its case-in-chief, intentionally elicited testimony from Skinner and several DEA agents as to Skinner's activities as a confidential informant in open court in the course of official and documented public proceedings. The revelation of Skinner's identity as an informant was not the product of an unofficial leak, nor was it improperly disclosed in an unofficial setting by careless agents.

**[5]** The government basically argues that federal law enforcement agencies should be able to develop a case for the United States Attorney, have their agents and confidential informants testify at trial in open court about the identity and activities of those confidential informants, but then refuse to confirm or deny the existence of records pertaining to that confidential informant. We cannot abide such an inconsistent and anomalous result. *See Ariz. St. Bd. for Charter Schools*, 464 F.3d at 1008 ("[C]ourts avoid natural readings that would lead to irrational results.") (internal citation omitted). Thus, a *Glomar* response is no longer available to the government with respect to Skinner's status as a confidential informant in Pickard's case.

**[6]** This is not to say that the DEA is now required to disclose any of the particular information requested by Pickard. We must maintain equipoise between the public's interest in knowing "what [its] government is up to" and the "legitimate governmental and private interests" in withholding documents subject to otherwise valid FOIA exemptions. *Boyd*, 475 F.3d at 385; *cf.* Rebecca Aviel, Restoring Equipoise to Child Welfare, 62 Hastings L.J. 401, 413-14 (2010). Thus we hold only that the government must take the next step. Having previously officially confirmed Skinner's status as an informant, it may no longer refuse to confirm or deny that fact. It must now produce a *Vaughn* index in response to Pickard's FOIA request,[2] raise whatever other exemptions may be appropriate, and let the district court determine whether the contents, as distinguished from the *existence*, of the officially confirmed records may be protected from disclosure under the DEA's claimed exemptions. *See Wolf*, 473 F.3d at 380; *see also Benavides,* 968 F.2d at 1248.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of summary judgment and REMAND to the district court for proceedings consistent with this opinion.

REVERSED and REMANDED.

---

WALLACE, Senior Circuit Judge, concurring:

In resolving this case, we must apply 5 U.S.C. § 552(c)(2) to the facts at issue. That section provides:

---

[2]"A *Vaughn* index is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the government asserts is applicable." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 n.3 (7th Cir. 1998).

> Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been *officially confirmed*.

*Id.* (emphasis added). In other words, once a confidential informant's status has been "officially confirmed," the Drug Enforcement Agency (DEA) cannot merely provide a Glomar response—that is, refuse to acknowledge or deny the existence of the requested records. *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007).

The specific circumstances pursuant to which an informant's status is deemed "officially confirmed" is a matter of first impression and great importance. Yet, in resolving this issue, both the prior case law and the legislative history of section 552(c)(2) are of little assistance. It also does not help that the Department of Justice (DOJ) has not promulgated any rule or regulation interpreting this provision. Additionally, while it is true that the plain meaning of statutes govern their interpretation, this principle is not of much assistance here: "official" means "authoritative" or "authorized," *Webster's Third New Int'l Dictionary* 1567 (3d ed. 1986), but this definition begs the question of *who* is authorized to make a confirmation official.

The DOJ and Pickard unsurprisingly present opposing views of what it means for a government agent to confirm officially an informant's status. Borrowing language from the rule for "official acknowledgments," the DOJ insists that an official confirmation requires that "the information requested must already have been made public through *an official and documented disclosure*." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990) (emphasis added). Thus, the DOJ avers

that a Glomar response was appropriate in this case because that agency has not issued an official press release disclosing Skinner's status.

There is, however, no logical reason for importing the "official acknowledgment" test into the context of section 552(c)(2). As other courts have explained, "official acknowledgment" and official confirmation do not implicate the same concerns. The standard for "official acknowledgment," for instance, was established to protect the government from officially releasing its sensitive information. *See id.* (explaining that the "official acknowledgment" criteria are significant because they recognize "that in the arena of intelligence and foreign relations there can be a critical difference between official and unofficial disclosures"). In contrast, the purpose of section 552(c)(2) is to protect a confidential informant's privacy and safety. *See North v. U.S. Dep't of Justice*, 658 F. Supp. 2d 163, 171 (D.D.C. 2009) ("[E]ven acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy").

As a practical matter, there are several reasons why a government agency would not want to acknowledge officially a fact that is widely reported. But in the section 552(c)(2) context, once a confidential informant's status has been revealed —whether through a documented press release or otherwise— the secrecy of his status is of little value to the government and he does not necessarily enjoy the same level of privacy and safety.

What further troubles me about the DOJ's position—that a press release is the only way to confirm officially a confidential informant—is that, to the DOJ's knowledge, no confidential informant has ever been officially confirmed in this manner. It is difficult to believe that Congress intended section 552(c) to be effectively inoperative. *See Corley v. United States*, 129 S. Ct. 1558, 1566 (2009) ("[O]ne of the most basic interpretive canons [is] that [a] statute should be construed so

that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (internal quotation marks omitted)).

Pickard's position, in contrast to the DOJ's approach, is that when the Government presents testimony and exhibits in open court regarding a confidential informant's status, these disclosures constitute official confirmation. In my view, this interpretation of section 522(c)(2) makes more sense. The Supreme Court has held, albeit in a different context, that "[t]he prosecutor's office is an entity and as such it is the spokesman for the Government." *Giglio v. United States*, 405 U.S. 150, 154 (1972). Accordingly, in the absence of a different DOJ rule, I believe that so long as the prosecution, as an agent of the Government, has solicited testimony in open court that a witness is a confidential informant, this is sufficient to confirm officially his or her status. I therefore concur with the majority.

I do, however, have one fairly significant concern: interpreting section 552(c)(2) in this manner may create difficulties for both federal prosecutors and confidential informants. On the one hand, prosecutors frequently must rely on informants, who possess vital information, to prosecute dangerous criminals. On the other hand, the DEA and confidential informants have a different interest in secrecy and privacy than federal prosecutors. Yet, under the majority holding, an Assistant United States Attorney can eliminate that privacy interest by asking a single question—i.e., "Did you serve as a confidential informant"—in open court.

Given these difficulties, my view of this case may have been different if the DOJ had issued regulations interpreting section 552(c). Under *Chevron U.S.A., Inc. v. National Resource Defense Counsel* and its progeny, we afford substantial deference to reasonable administrative interpretations of federal statutes promulgated by notice and comment, or otherwise appropriate rulemaking. 467 U.S. 837, 843 (1984).

But by failing to issue such regulations, we are required to afford the DOJ's interpretation of section 552(c) the same amount of deference we give Pickard's or any other litigant's. *See Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) ("We do not afford *Chevron* or [even] *Skidmore* deference to litigation positions unmoored from any official agency interpretation because Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands" (internal quotation marks omitted)).

Of course, as the majority correctly points out, its decision does not necessarily require the DEA to disclose all of the specific information and documents requested by Pickard. "Congress established FOIA" to strike a balance between the public's interest in knowing "what [its] government is up to" and the "legitimate governmental or private interests" in withholding documents subject to FOIA's exemptions. *Boyd*, 475 F.3d at 385 (internal quotation marks omitted). Accordingly, at this point, we are merely requiring the DEA to take the next step—that is, to produce a Vaughn index. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (ordering government to provide an itemized index of the particular FOIA exemptions claimed for each requested document).